# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2021

Lyle W. Cayce
Clerk

No. 20-60936

Ahmed Elsayed Mahm Ibrahim,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 209 768 382

Before King, Smith, and Haynes, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Ahmed Ibrahim is an Egyptian national and lawful permanent resident of the United States. Several years ago, he sent a picture of his genitals to someone who identified herself as a thirteen- or fourteen-year-old girl. For that conduct, he pleaded guilty of violating Section 14:81 of the Louisiana Revised Statutes, which proscribes "Indecent behavior with juveniles." That plea led the Attorney General to institute removal proceedings. After a long and complex procedural history, the Board of Immigration Appeals ("BIA") ordered Ibrahim removed to Egypt. He petitions for review. Because any errors the BIA made were harmless, we deny the petition.

No. 20-60936

I.

Ibrahim committed his crime in June 2016.  Later that year, Louisiana charged him with "Computer-aided solicitation of a minor" under Section 14:81.3 of the Louisiana Revised Statutes.  Ibrahim ultimately avoided a trial on that charge by submitting a guilty plea in August 2017.  Importantly, however, he pleaded guilty of committing a *different* crime—"indecent behavior with a juvenile" under Section 14:81—for which he received a suspended sentence of five years at hard labor and was required to register as a sex offender.

Shortly thereafter, the Attorney General took Ibrahim into custody and instituted removal proceedings.  Based on his Section 14:81 plea, the government alleged that Ibrahim had been convicted of an "aggravated felony" and a "crime of child abuse"—thus making him removable under 8 U.S.C. § 1227(a)(2)(A)(iii) and (E)(i), respectively.

Ibrahim's bond hearing and initial removal hearing were held on the same day in late October before the same immigration judge ("I.J.").  That is when the first error relevant to this petition occurred.  During the bond hearing, the government introduced evidence of Ibrahim's Section 14:81 plea in the form of criminal-court minutes.  Under immigration regulations, bond proceedings and removal proceedings are supposed to be separate from one another.[1]  So, the government should have formally resubmitted the criminal-court minutes at the start of the removal hearing, but it never did (probably

---

[1] *See* 8 U.S.C. § 1229a(c)(1)(A) ("At the conclusion of the [removal] proceeding the immigration judge shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing."); 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.").

No. 20-60936

because the removal hearing directly followed the bond hearing, and the minutes had been introduced during the bond hearing). As a result, based on the criminal-court minutes that hadn't been formally introduced into the record, the I.J. found that Ibrahim had been convicted of violating Section 14:81.[2] No one caught or objected to that mistake.[3] Relying on that finding, the I.J. sustained both charges of removability.

Ibrahim then submitted applications to adjust his status under 8 U.S.C. § 1255(a) and waive his inadmissibility under 8 U.S.C. § 1182(h). But when he did not submit the necessary paperwork on time, another I.J. declined to grant him a continuance and denied both applications. Because the aggravated-felony charge rendered Ibrahim ineligible for voluntary departure, that I.J. ordered him removed to Egypt.

Ibrahim appealed, asking the BIA to grant him a continuance and remand for reconsideration of his applications for relief from removal. But although he also requested the BIA to review the aggravated felony charge, his appeal never mentioned the child-abuse charge.

The BIA reversed and remanded to allow Ibrahim another chance to submit his paperwork and applications for relief. It also instructed the I.J. to reconsider its decision that Ibrahim had been convicted of an aggravated felony based on *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017).

On remand, Ibrahim disputed the aggravated-felony charge but also sought to relitigate the child-abuse charge. A new I.J. suggested that Ibrahim

---

[2] At the government's request, we ordered the record to be supplemented with Ibrahim's bill of information and criminal-court minutes.

[3] Ibrahim claims otherwise, but that's not quite correct. He merely denied the existence of his Section 14:81 plea and sentence. When the I.J. found its existence based on the criminal-court minutes, Ibrahim did not object to the absence from the record of the criminal-court minutes.

would be unlikely to revisit the child-abuse charge but encouraged him to make arguments about it in his next filings. In response, the Attorney General brought an additional charge of removability, alleging that Ibrahim had committed a "crime involving moral turpitude" ("CIMT") and was therefore removable under 8 U.S.C. § 1227(a)(2)(A)(i). After briefing, the I.J. rejected the aggravated-felony charge based on *Esquivel-Quintana* and sustained the CIMT charge. The I.J. did not address the child-abuse charge—likely because Ibrahim's briefs failed to analyze it and mentioned it only in passing.

Next, yet another I.J. stepped in to adjudicate Ibrahim's applications for relief after he finally had submitted the necessary paperwork. At a hearing on those applications, Ibrahim took the stand to try to establish that he had good moral character despite his conviction. During his sworn testimony, he confessed that he had sent an image of his genitals to a girl who said she was thirteen or fourteen. He also admitted that he had pleaded guilty of "indecent behavior with a juvenile"—a crime under Section 14:81. His attorneys conceded the same in a brief on his behalf, as they had in other documents since the start of his case.

In addition to deciding Ibrahim's applications for relief, however, the new I.J. also revisited the removability decisions made by his predecessor. That I.J. noticed the mistake with the introduction of the criminal-court minutes and observed they should not have been considered in Ibrahim's removal proceedings. Based on that observation, the I.J. found the Attorney General had not proven Ibrahim's Section 14:81 conviction and, therefore, had not established, by clear and convincing evidence, that Ibrahim was removable. As alternative grounds for the decision, the I.J. ruled that Ibrahim's

conviction did not qualify as an aggravated felony or a CIMT[4] and that his applications for relief from removal should be granted. Even so, the I.J. entirely failed to mention or address the child-abuse charge that had been sustained against Ibrahim.

The Attorney General appealed. As relevant here, he contended that Ibrahim's Section 14:81 conviction had been established by his testimony and the briefs submitted by his attorneys. The Attorney General also asserted that the I.J. had erred in terminating removal proceedings because Ibrahim was still removable based on the child-abuse charge. In opposition, Ibrahim asked the BIA to sustain the I.J.'s determination that the Attorney General had not satisfied his "evidentiary burden of proving [Ibrahim] was convicted of any crime by not submitting documents." Ibrahim also stated that "he adopt[ed] the reasoning stated in the Immigration Judge's decision" on the aggravated felony and CIMT issues. But even though Ibrahim was aware that a child-abuse charge had been sustained, he did not mention the charge to the BIA or ask that agency to review it.

The BIA reversed. On the evidentiary issue, it conceded that Ibrahim's criminal-court minutes had not been properly introduced. Even so, the BIA overturned the decision of the I.J. because Ibrahim "ha[d] admitted in multiple briefs and during his testimony that he pled guilty to violating Louisiana Revised Statutes § 14:81." On the removability issue, the BIA held that Ibrahim was removable because another I.J. had previously found that he had committed a crime of child abuse; in its view, that finding was the law of the case and could not be revisited. Finally, the BIA decided that Ibrahim's applications for relief should not be granted because he did not qualify for a

---

[4] Notably, the I.J. analyzed this issue using the text of Section 14:81.3, not Section 14:81, based on a misreading of Ibrahim's criminal records.

No. 20-60936

favorable exercise of discretion.  Accordingly, it ordered Ibrahim removed to Egypt.

This petition followed.

## II.

Ibrahim contests two aspects of the BIA's decision.

*First*, he claims that the BIA erroneously determined that his testimony and his attorney's statements established that he was convicted of violating Section 14:81.  According to him, immigration regulations permit the government to use documentary evidence only to prove an alien's criminal conviction.  He also claims that relying on his testimony violated due process because it was not probative enough to be admissible and that the BIA could not use his attorney's briefs as evidence of his conviction.  And in the alternative, Ibrahim maintains those sources of information are not reliable enough to establish his conviction by clear and convincing evidence.[5]

*Second*, Ibrahim says that the BIA erroneously held that his removability for the child-abuse charge was the law of the case.  He claims that couldn't be true, given that the BIA never ruled on that question itself or prohibited an I.J. from revisiting it on remand.

## A.

Before we can address the merits of those issues, however, we must confirm they have been exhausted.  If not, we are without jurisdiction.  *Cruz Rodriguez v. Garland*, 993 F.3d 340, 345 (5th Cir. 2021) (citing 8 U.S.C.

---

[5] In his reply brief, Ibrahim also appears to argue that the BIA could not consider evidence introduced during the relief stage of removal proceedings to determine whether Ibrahim was removable in the first place.  Because that argument was not raised in his opening brief, it has been forfeited.  *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 528 n.5 (5th Cir. 2020).

6

§ 1252(d)(1)).  The government claims that Ibrahim did not exhaust the issues before us.  It observes that Ibrahim never specifically objected to the absence of the criminal-court minutes from the record.  It also notes that before the BIA, Ibrahim never contested his removability for committing a crime of child abuse.  All that is true.  Even so, most of Ibrahim's claims have been exhausted.

Ibrahim's claim that the government did not prove his Section 14:81 conviction by clear and convincing evidence has been exhausted.  "[I]f the BIA deems an issue sufficiently presented to consider it on the merits, such action by the BIA exhausts the issue as far as the agency is concerned . . . ." *Mirza v. Garland*, 996 F.3d 747, 753 (5th Cir. 2021) (quoting *Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010)).  And that's the case even if the government, not the alien, brought the issue to the BIA's attention.  *See id.* That's what happened here.  The government contended that those sources of information established Ibrahim's Section 14:81 conviction by clear and convincing evidence, and the BIA agreed.  Accordingly, that claim has been exhausted.

The same goes for Ibrahim's claim that his removability for committing a crime of child abuse was not the law of the case.  That claim is also exhausted because the BIA "consider[ed] it on the merits." *Mirza*, 996 F.3d at 753.  Just as for the previous claim, the government presented the law-of-the-case issue to the BIA, which adopted the government's position on that question as its own.  "So the claim was exhausted, and we have jurisdiction." *Id.*

Ibrahim has also exhausted his claim that immigration regulations require convictions to be proven using documentary evidence.  In the brief he submitted to the BIA, he contended that the government had not met its evidentiary burden because it had not introduced any documents into the rec-

ord. Although that assertion was not as developed as the theory he presents today, the arguments that aliens present to that agency need not be "identical" to those they proffer to this court. *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018). Instead, the exhaustion requirement is satisfied when they make "concrete statement[s] before the BIA to which they could reasonably tie their claims before this court." *Omari v. Holder*, 562 F.3d 314, 322 (5th Cir. 2009).

Ibrahim's statement was sufficiently concrete to "put the BIA on notice of his claim" that the government was required to submit documents to support his conviction. *Vazquez*, 885 F.3d at 868. So, that claim is exhausted.

But Ibrahim has not exhausted his claims that his testimony was not probative enough to be admissible.[6] Those arguments are brand new. Neither the Attorney General nor Ibrahim asked the BIA to resolve them. As a result, the BIA never had "the opportunity to apply its specialized knowledge and experience to the matter" and "resolve a controversy or correct its own errors before judicial intervention." *Lopez-Dubon*, 609 F.3d at 644 (quoting *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007)). Therefore, Ibrahim has failed to exhaust those issues, and we lack jurisdiction. *See Omari*, 562 F.3d at 321–22.

---

[6] Ibrahim characterizes this as a due process challenge. Such claims "are generally not subject to the exhaustion requirement." *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) (per curiam). But even though Ibrahim "couche[s]" this claim "in terms of due process, it actually concerns 'procedural error correctable by the BIA'"—namely, the inadmissibility of the evidence it considered. *Id.* (quoting *Anwar v. INS*, 116 F.3d 140, 144 n.4 (5th Cir. 1997)). As a result, this issue is "properly subject to the exhaustion requirement." *Id.*

No. 20-60936

## B.

Now, to the merits. None of the issues Ibrahim has raised merits our granting his petition. Even if we agreed the BIA analyzed them incorrectly, we would still deny his petition. Any errors were harmless.

Normally, we may "uphold agency action only on the grounds that the agency invoked when it took the action." *Maniar v. Garland*, 998 F.3d 235, 240 (5th Cir. 2021) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).[7] We have recognized, however, a "limited exception[]" in immigration cases. *Id.* (quoting *Luna-Garcia v. Barr*, 932 F.3d 285, 291 (5th Cir. 2019)).[8] Even where the BIA makes a mistake, we may affirm its ultimate decision if "there is no realistic possibility" that (1) "[its] conclusion would have been different absent the error"[9] or (2) "[it] would reach a different conclusion on remand."[10] In those situations, instructing the BIA to correct the error "would be an idle and useless formality" that would "convert judicial review of agency action into a ping-pong game"—something "*Chenery* does not require." *Maniar*, 998 F.3d at 240 (quoting *Morgan Stanley Cap. Grp. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 545 (2008)). And the BIA's purported errors in this case comfortably meet that standard.

---

[7] *Accord SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 87 (1943).

[8] And we're not alone. *See Nadal-Ginard v. Holder*, 558 F.3d 61, 69 n.7 (1st Cir. 2009); *Cao He Lin v. DOJ*, 428 F.3d 391, 401 (2d Cir. 2005); *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004); *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010); *Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007); *Gilbertson v. Garland*, 7 F.4th 700, 705 n.2 (8th Cir. 2021); *Zamorano v. Garland*, 2 F.4th 1213, 1228 (9th Cir. 2021); *Nazaraghaie v. INS*, 102 F.3d 460, 465 (10th Cir. 1996).

[9] *Maniar*, 998 F.3d at 240 (alteration in original) (quoting *Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 (5th Cir. 2021)).

[10] *Luna-Garcia*, 932 F.3d at 291 (quoting *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)).

*First*, any errors in finding that Ibrahim violated Section 14:81 were harmless. There is "no realistic possibility" that the BIA would change its decision on remand. *Luna-Garcia*, 932 F.3d at 291. Even in the absence of his testimony and his attorney's statements, the BIA could have taken administrative notice of the relevant facts contained in the criminal-court minutes,[11] which unequivocally show that Ibrahim pleaded guilty of "indecent behavior with a juvenile" under Section 14:81. Thus, remanding would be pointless.

*Second*, any errors the BIA made in concluding that Ibrahim was removable for committing a crime of child abuse were harmless. There is "no realistic possibility" that that "conclusion would have been different" if the BIA had determined the child-abuse finding was not the law of the case. *Maniar*, 998 F.3d at 240. Whether an I.J. or the BIA could have revisited that question is purely academic. Neither did.[12] What's more, Ibrahim never seriously asked them to do so. He failed to dispute the child-abuse charge in his initial appeal. Then, on remand, he did not meaningfully contest that finding before the Immigration Court—even after an I.J. encouraged him to do so.

Finally, Ibrahim never mentioned the charge in his briefing during the second appeal. That is so even though the government specifically highlighted that charge in its briefing. In sum, Ibrahim repeatedly failed to contest the child-abuse charge, so the BIA would almost certainly have held that he

---

[11] *See* 8 C.F.R. § 1003.1(d)(3)(iv)(A) ("[T]he Board may take administrative notice of facts that are not reasonably subject to dispute, such as: . . . (2) The contents of official documents outside the record; (3) Facts that can be accurately and readily determined from official government sources and whose accuracy is not disputed; . . . .").

[12] An I.J. revisited the existence of Ibrahim's conviction and his removability for committing a CIMT, but the I.J. never addressed his removability for committing a crime of child abuse.

forfeited his challenge to it.[13]  Thus, any error in the BIA's analysis had no impact on its ultimate conclusion that Ibrahim was removable.

*     *     *

The petition for review is DENIED.

---

[13] Indeed, much of the BIA's reasoning on the law-of-the-case issue also explains why Ibrahim forfeited his challenge to that charge of removability. *See In re M-B-C-*, 27 I. & N. Dec. 31, 31 n.1 (B.I.A. 2017) (holding that an alien had waived issues that he failed to "meaningfully challenge[]"); *In re R-A-M-*, 25 I. & N. Dec. 657, 658 n.2 (B.I.A. 2012) ("The respondent did not appeal the Immigration Judge's decision regarding that aspect of his claim, so this issue is waived").