# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 3, 2022

Lyle W. Cayce
Clerk

No. 20-60624

Sonia Maritzel Martinez-Guevara,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 094 787 317

Before Smith, Elrod, and Oldham, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Sonia Martinez-Guevara, an alien, seeks review of an order of removal. She says that worsened conditions in her home country entitle her to remain in the United States. The Board of Immigration Appeals ("BIA" or "Board") affirmed her removal. But Martinez-Guevara insists that the Board abused its discretion by neglecting evidence and misapplying the law. That leaves us two questions.

First is our jurisdiction. Martinez-Guevara did not move the BIA to reconsider its ruling. We must decide whether that deprives us of jurisdiction

No. 20-60624

on petition for review.  It does not.  Next are the merits.  The Board did not err, so we deny the petition.

I.

In 2006, Martinez-Guevara swam the Rio Grande River into the waiting arms of federal border agents, who transported her to a processing center. But that year, more than a million noncitizens illegally entered through the southwest border—a number not surpassed until now.[1]  The crush of crossings overwhelmed federal authorities.  Lacking space to detain Martinez-Guevara, they released her with orders to appear before an immigration court in Harlingen, Texas.  Yet Martinez-Guevara never showed.  She escaped inland, and the immigration court ordered her removal if she were found.

Thirteen years later, Martinez-Guevara moved to reopen her removal proceedings, seeking asylum and related relief.  An alien usually must file such a motion within ninety days of the removal order.  *See* 8 U.S.C. § 1229a-(c)(7)(C)(i).  But our petitioner claims an excuse:  She says that conditions in El Salvador, her home country, have materially worsened since the removal order issued.  If she can show that, the ninety-day time bar does not apply.  *Id.* § 1229a(c)(7)(C)(ii).

To support her motion to reopen, Martinez-Guevara contends that since the removal order, gangs in El Salvador have attacked the families of police there.  That "systematic" activity, she claims, caused a material

---

[1] *See* U.S. Border Patrol, Southwest Border Sectors: Total Encounters by Fiscal Year, https://www.cbp.gov/sites/default/files/assets/documents/2021-Aug/US59B8~1.PDF (last visited Dec. 2, 2021); Nick Miroff, *Border Arrests Have Soared to All-Time High, New CBP Data Shows*, Wash. Post (Oct. 20, 2021), https://www.washingtonpost.com/national/border-arrests-record-levels-2021/2021/10/19/289dce64-3115-11ec-a880-a9d8c009a0b1_story.html (reporting that the 2021 fiscal year marked an all-time high of 1.66 million alien detentions on the southern border).

worsening of conditions in El Salvador. And because two of her relatives are police officers, she says she has shown that she reasonably fears future persecution because of her "membership in a particular social group." *Id.* § 1158(b)(1)(B)(i). If proved, all that could make Martinez-Guevara eligible to remain in the United States.

With her motion, Martinez-Guevara presents personal documents, a State Department report, and seven news articles from El Salvador. The documents show that she has police officers in her family and that their relatives have received death threats from gangs stemming from that relationship. The State Department report, published the year after the removal order, does not discuss gang-related attacks on police in El Salvador, though it does recount a mass shooting that killed or wounded a dozen officers. The news articles, from several years later, report attacks on police officers and their families. They also recount the belief of two Salvadoran officials that the attacks reflected a campaign of gang violence.

The immigration judge ("I.J.") denied Martinez-Guevara's motion as untimely. The I.J. acknowledged that the petitioner had evidenced attacks on police officers' relatives and threats against her family. But the I.J. concluded, citing *Singh v. Lynch*, 840 F.3d 220 (5th Cir. 2016) (per curiam), that Martinez-Guevara did not "meet the heavy burden [she] must overcome to show changed country conditions."

Martinez-Guevara appealed that ruling to the BIA, stressing her evidence—from the two Salvadoran officials—that gangs had coordinated the recent attacks. That evidence, she urged, showed a "systematic strategy of targeting" police officers' relatives, and that this strategy had materially altered conditions in El Salvador. She then distinguished her case from *Singh*, where she said the petitioner and his family had endured "isolated" threats of violence.

No. 20-60624

The BIA affirmed. Refining the I.J.'s reasoning, the Board observed that the petitioner had shown, at most, an "incremental increase in violence in El Salvador since 2006." And under *Singh*, the Board explained, mere "continuance" of violence in a place, *id.* at 222, does not prove "a material change" in conditions there. Likewise, though the threats against Martinez-Guevara's relatives altered "her personal circumstances," they did not reflect a dramatic nationwide shift. The BIA thus dismissed Martinez-Guevara's appeal.

Instead of asking the BIA to reconsider, Martinez-Guevara came to us. She petitions for review on two grounds. *First*, she claims that the Board abused its discretion by not discussing two of the news articles she offered as evidence. *Second*, she contends that the Board misapplied *Singh*.

We do not agree. The BIA did not abuse its discretion, so we deny the petition for review. But first, we explain why we have jurisdiction.

## II.

We always may question our jurisdiction, even if neither side contests it. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 (5th Cir. 2001). And we would lack jurisdiction over this appeal unless the petitioner has exhausted her remedies before the Board. *Ibrahim v. Garland*, 19 F.4th 819, 825 (5th Cir. 2021); 8 U.S.C. § 1252(d)(1). Martinez-Guevara lost before the I.J., appealed, and then lost at the Board. But she did not ask the Board to reconsider its judgment; instead, she came directly to us. We must decide whether she had to ask the Board to reconsider its ruling to exhaust her claims. We think not.

## A.

Congress constricts our review of removal orders. We may review such an order insofar as "the alien has exhausted all administrative remedies available to [her] as of right." 8 U.S.C. § 1252(d)(1). In other words, if a

remedy is available, the alien must use it.

Requiring exhaustion ensures that the BIA can apply its expertise to claims before they reach us. *Dale v. Holder*, 610 F.3d 294, 301 (5th Cir. 2010). Exhaustion also promotes finality in immigration cases; it cuts the risk that we must prolong a proceeding by reversing to correct errors that the Board had no chance to address. *See Cruz Rodriguez v. Garland*, 993 F.3d 340, 345 (5th Cir. 2021) (per curiam).

Martinez-Guevara has moved to reopen her removal proceedings. Such a motion goes first to an I.J. *See* 8 U.S.C. § 1229a(a), (b). If the petitioner loses there, she may appeal to the Board. 8 C.F.R. §§ 1003.1(b)(3), 1003.38(a). If she loses there, she may ask the Board to reconsider. 8 U.S.C. § 1229a(c)(6)(A).

Reading Section 1252(d), one might think we lack jurisdiction: Martinez-Guevara did not seek reconsideration from the Board; reconsideration appears to be an "administrative remed[y]," *id.* § 1252(d)(1); so she did not exhaust.

But our caselaw says otherwise. In this circuit, a petitioner exhausts a claim by presenting it to the BIA—whether on appeal or on a motion to reconsider. That's why a motion to reconsider is not "generally required" to exhaust. *Omari v. Holder*, 562 F.3d 314, 320 (5th Cir. 2009). Such a motion is necessary, we have said, only when the Board's decision "itself results in a new issue and the [Board] has an available and adequate means for addressing" it. *Id.* A new issue is one that "neither party could have possibly raised" before the Board's decision. *Id.* at 320–21.

Our caselaw thus creates two classes of claims: The first includes claims raised or lost at the BIA. Those claims are exhausted, so we can hear them even without a motion to reconsider. *See Dale*, 610 F.3d at 300–01. Of course, a petitioner cannot contest the Board's errors before it. But that does

No. 20-60624

not mean every mistake by the Board calls for a motion to reconsider. Such a motion is not required when the petitioner "raised, presented, or mentioned" the direct predicate of the Board's error to the Board. *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018) (cleaned up).

That's why we can hear claims that the Board wrongly weighed the evidence[2] or misapplied the law. Those claims are new in some sense. But so long as the petitioner raised the same claims to the Board on appeal from the I.J., the Board had a chance to address them, so they are exhausted.[3]

The second class holds claims alleging some *new* defect that the BIA "never had a chance to consider." *Avelar-Oliva v. Barr*, 954 F.3d 757, 766 (5th Cir. 2020) (quotation omitted). Such claims present a "*wholly new* ground for relief" that arises "*only* as a consequence of" the Board's error. *Id.* (emphasis added) (cleaned up). We treat those claims as unexhausted unless the petitioner presents them to the Board in a motion to reconsider. *Id.* Claims that the Board "engaged in impermissible factfinding"[4] or applied the wrong standard of review[5] belong to this unreviewable class. So do claims that the Board's ruling on a properly presented issue breached a procedural requirement or the petitioner's due-process rights.[6]

---

[2] *See Tabora Gutierrez v. Garland*, 12 F.4th 496, 503–06 (5th Cir. 2021) (considering such a claim after setting aside a standard-of-review challenge for want of jurisdiction).

[3] *See, e.g.*, *Dale*, 610 F.3d at 300 (holding that petitioner had exhausted because he "dispute[d] only the [Board's] answer" to the legal question whether he was convicted of an aggravated felony).

[4] *Omari*, 562 F.3d at 321.

[5] *See, e.g.*, *Avelar-Oliva*, 954 F.3d at 766.

[6] *See, e.g.*, *Judhani v. Holder*, 538 F. App'x 562, 563 (5th Cir. 2013) (per curiam) ("Although the petitioners allege due-process violations, they may not escape the exhaustion requirement by couching their claims, which could have been raised in the first instance before the [Board], in terms of due process."); *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th

In short, to classify a claim, we ask whether the Board had a *chance* to consider it. The Board need not actually decide or consider the issue; what matters is whether the petitioner presented it.

Claims that the BIA considered are exhausted. *Ibrahim*, 19 F.4th at 825. "[B]rand new" arguments are not. *Id.* at 826. Between those extremes, we ask whether the petitioner "could reasonably tie" what she said to the Board to her claims before us. *Id.* (cleaned up). If she can do that, she exhausted.

### B.

Martinez-Guevara presents two claims here. *First*, she says that the BIA abused its discretion by not discussing two of the articles she offered as evidence. *Second*, she avers that the Board "erred by misapplying" *Singh*, which she says is not like her case. The question is whether Martinez-Guevara gave the Board *a chance* to consider each claim, and the answer is yes. Our petitioner has exhausted her claims, so we have jurisdiction.

Martinez-Guevara first protests that the Board did not address the two news articles. Those articles recount two Salvadoran officials' belief that gangs were targeting police officers' relatives to undermine policing in the country. That claim would be unexhausted had she not raised it to the Board. But she did raise it—when she asked the Board to reverse the I.J.'s ruling on the same ground. Martinez-Guevara told the Board that the I.J. had erred because the news articles showed "a systematic strategy" to "target[ ] the family members of police officers." That strategy, she claimed, changed "the country conditions in El Salvador." Because the Board had a chance to

---

Cir. 2004) (per curiam) ("Procedural error correctable by the Board . . . is properly subject to the exhaustion requirement." (cleaned up)).

address that claim then, it is exhausted now.

The same is true of the second claim. In her brief before the BIA, Martinez-Guevara urged that the I.J. had misapplied *Singh*. The Board addressed that claim; it cited *Singh* and explained why it controlled. That claim is exhausted.[7]

Petitioners often accuse the BIA of ignoring evidence.[8] Faced with such claims, we must review our jurisdiction with care. To exhaust her remedies, a petitioner who says that the Board committed a new error must bring that claim to the Board in a motion to reconsider.[9] Mandatory exhaustion regimes brook no exceptions. *Ross v. Blake*, 578 U.S. 632, 639 (2016).

But we can hear this appeal. Martinez-Guevara alleges nothing new. She accuses the Board of repeating the legal and factual errors that she asked it to correct when she appealed the I.J.'s adverse ruling. We see no point in "calling the BIA to ponder once again the very issue[s] upon which it has already ruled." *Dale*, 610 F.3d at 301 (cleaned up). This petitioner has exhausted.[10]

---

[7] *See Ibrahim*, 19 F.4th at 825 ("If the BIA deems an issue sufficiently presented to consider it on the merits, such action by the BIA exhausts the issue." (cleaned up)).

[8] *See, e.g.*, *Rodriguez-Perdomo v. Barr*, 784 F. App'x 258, 261 (5th Cir. 2019) (per curiam).

[9] Thus, insofar as Martinez-Guevara contends only that the BIA erred procedurally, her claim that the BIA ignored relevant evidence is unexhausted because she did not first raise it in a motion for reconsideration. *Cf. Omari*, 562 F.3d at 321; *Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018).

[10] *See Omari*, 562 F.3d at 320 ("If a party disagrees with the BIA's resolution of an issue previously raised before the BIA, there is no need to reargue this issue in a motion for reconsideration." (cleaned up)); *see also Dale*, 610 F.3d at 301 ("Federal jurisdiction is not conditioned upon the petitioner affording the BIA a second bite at the apple to rid its opinion of any legal error; administrative exhaustion requires only that federal courts refrain from addressing an immigration issue until the appropriate administrative authority has had

No. 20-60624

### III.

Turning to the merits, we agree with the Board and deny the petition for review.

The BIA enjoys vast discretion when it denies motions to reopen. We must deny a petition for review unless the Board's decision is entirely capricious, irrational, or unfounded. *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). The Board may not ignore critical evidence or draw absurd conclusions from it. *See, e.g.*, *Abdel-Masieh v. INS*, 73 F.3d 579, 584–85 (5th Cir. 1996). But anything short of that must stand.

The BIA is required only to "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002) (cleaned up).[11] The Board need not acknowledge every piece of evidence that a petitioner presents. *See id.* ("The Board does not have to write an exegesis on every contention." (cleaned up)). It need only show that it considered the petitioner's claim, supported its view with some evidence, and did not ignore facts that would render its decision entirely unreasonable.

The BIA easily satisfies that low bar. It acknowledged the evidence and weighed it carefully. Though conceding that the 2006 State Department report did not discuss gang violence against police officers' families, the Board observed that Martinez-Guevara had not linked the attacks described

---

the opportunity to apply its specialized knowledge and experience to the matter." (cleaned up)).

[11] *See also Singh*, 840 F.3d at 222 ("The BIA's ruling will stand, even if this court concludes it is erroneous, so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." (cleaned up)).

in the news articles to a national trend.

To conclude that, the Board did not need specifically to refute the two Salvadoran officials' belief that the violence arose from a coordinated gang campaign.  Neither official explained why he believed that, and one admitted that he needed to "find out" whether his suspicions were "true."  Given the weakness of that evidence, it certainly was not critical.  *Cf. Abdel-Masieh*, 73 F.3d at 584–86.  The Board could and did conclude that the evidence showed too little violence—gang-coordinated or not—to prove a material change in country conditions.

Nor did the BIA err applying *Singh*.  Like Martinez-Guevara, Singh filed an untimely motion to reopen and claimed that evidence of violence in his home country entitled him to relief.  We denied review and affirmed the Board, which declined to reopen Singh's case because Singh had not shown that conditions at home "ha[d] substantially deteriorated" since the removal order.  *Singh*, 840 F.3d at 222.

So too here.  Like Singh, Martinez-Guevara presents compelling evidence of a personal change in circumstances.  But to obtain relief, she also must show a dramatic nationwide change.  From her scattered anecdotal evidence, the Board concluded that she did not meet that heavy burden.  That conclusion was neither irrational nor unsupported.  *Cf. Ramos-Lopez v. Lynch*, 823 F.3d 1024, 1026 (5th Cir. 2016).

The petition for review is DENIED.