# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2022

Lyle W. Cayce
Clerk

No. 20-60138

Santos Tamayac,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of the Order of the
Board of Immigration Appeals
BIA No. A029 921 809

Before Elrod, Southwick, and Costa, *Circuit Judges*.

Per Curiam:[*]

Santos Tamayac, a native and citizen of Guatemala, petitions for review from a decision of the Board of Immigration Appeals dismissing his appeal and upholding the denial of his motion to reopen removal proceedings. Because he fails to show any reversible error by the BIA, we DENY in part and DISMISS in part the petition for review.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60138

Tamayac entered the United States without inspection near Nogales, Arizona in January 1991. A couple of years later, the government sent Tamayac an Order to Show Cause (OSC), alleging that he was a native and citizen of Guatemala and was subject to deportation. In an affidavit, Tamayac certified that he has been "served with a copy of the Order to Show Cause in this case." His proceedings were scheduled to begin in Miami, Florida. But Tamayac filed a motion to transfer venue to Houston, Texas, and the judge granted the motion.

The Houston immigration court sent his lawyer, Ms. Juarbe, a certified mail providing written notice that a hearing was scheduled on June 12, 1995. But Juarbe stated that she was unable to reach Tamayac because his telephone number was disconnected and he had moved without leaving a forwarding address. Accordingly, the immigration judge issued a decision *in absentia* on June 12, 1995, denying asylum and granting voluntary departure with an alternate order of deportation to Guatemala.

Over twenty years later, in 2019, Tamayac's new attorney filed a motion to reopen Tamayac's removal proceedings and to rescind the deportation order. The immigration judge denied the motion. Tamayac then appealed to the BIA, which affirmed the decision.

Now, on petition for review, Tamayac raises three issues. First, he argues that the BIA erred in determining that he received proper notice of the June 12, 1995 hearing. Second, he argues that the Immigration Judge lacked jurisdiction over him in his original proceedings because service of the OSC was insufficient under BIA precedent. Third, he argues that the BIA failed to address his argument concerning *sua sponte* reopening and thus violated the regulatory requirement that the BIA exercise its independent judgment and discretion over cases before it.

2

This court reviews the denial of a motion to reopen under "a highly deferential abuse-of-discretion standard." *Ojeda-Calderon v. Holder*, 726 F.3d 669, 672 (5th Cir. 2013) (quoting *Gomez-Palacios v. Holder,* 560 F.3d 354, 358 (5th Cir. 2009)). "[M]otions to reopen deportation proceedings are 'disfavored,' and the moving party bears a 'heavy burden.'" *Altamirano-Lopez v. Gonzales,* 435 F.3d 547, 549–50 (5th Cir. 2006) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)). The BIA's decision must be upheld so long as it "is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir. 2005) (quoting *Pritchett v. INS,* 993 F.2d 80, 83 (5th Cir.1993)). Questions of law are reviewed *de novo*, and the BIA's factual findings are reviewed for substantial evidence and may not be overturned unless the evidence compels a contrary conclusion. *Ojeda-Calderon*, 726 F.3d at 672–73.

I.

The BIA reasonably determined that Tamayac had proper notice of his deportation hearing. Under 8 U.S.C. § 1252b, which was applicable at the time of Tamayac's 1993–1995 proceedings, a deportation order entered *in absentia* could be rescinded only upon a motion to reopen filed at any time "if the alien demonstrates that [he] did not receive notice in accordance with" § 1252b(a)(2). 8 U.S.C. § 1252b(c)(3)(b) (repealed 1996). Section 1252b(a)(2) stated that "written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1252b(a)(2). Tamayac's notice of hearing was sent by certified mail to his counsel, Iris Juarbe, who Tamayac had personally "authorized . . . to represent him." Juarbe had previously submitted an asylum application and

motion to change venue on Tamayac's behalf. And Juarbe herself signed a form certifying that she was Tamayac's "attorney of record."

Tamayac argues that Juarbe was not his counsel "of record" because there is no current record showing that a notice of appearance was filed, and thus, the notice of hearing was inadequate. He contends that holding Juarbe as his counsel "of record," even when Juarbe never filed a notice of appearance, would render the phrase "of record" in the statute mere surplusage. If Congress meant to permit notice to be sent to a person's "counsel *simpliciter*," he argues, Congress "could have easily done so" by omitting the phrase "of record."

But Tamayac's argument is premised on the false assumption that, in the present context, we must require the filing of a notice of appearance for a counsel to be a counsel "of record" in order to give adequate meaning to the phrase. Of course, the phrase "counsel of record" in the statute does not just mean *any* counsel. But in the present case, the record warrants finding that Juarbe was more than Tamayac's "counsel *simpliciter*." Juarbe had submitted motions to the court on Tamayac's behalf, she signed a form certifying that she was Tamayac's "attorney of record," and Tamayac never denies—even on appeal—that Juarbe was authorized to represent him in his deportation proceedings. Indeed, the reason Tamayac's case was transferred from Miami to Houston was because of a motion to transfer venue that Juarbe filed. We hold that these facts support the BIA's determination that Tamayac had proper notice of the hearing.

## II.

The BIA did not abuse its discretion in determining that the OSC service was proper. Tamayac argues that the immigration judge did not have personal jurisdiction over him because he was not properly served with the OSC. He contends that effectuating service of an OSC sent by certified mail

under § 1252b requires a return receipt to be signed by the alien or a responsible person at the alien's address. 8 U.S.C. § 1252b (repealed 1996); 8 C.F.R. § 103.8(a)(2)(iv); *see Matter of Grijalva*, 21 I. & N. Dec. 27, 32-33 (BIA 1995). And because no signed receipt is in the administrative record here, he contends that the OSC service was improper.

But Tamayac conceded service of the OSC in his 1994 affidavit. He certified that he has been "served with a copy of the Order to Show Cause in this case." And in his 2019 affidavit and briefing on appeal, Tamayac still does not deny actual receipt of the OSC. Furthermore, Tamayac's contention that the immigration judge lacks personal jurisdiction fails because he admitted in his 1994 affidavit that he received the OSC and conceded "deportability as charged." An "alien who fails to object to the notice to appear and concedes his removability 'waive[s] his challenge to the [immigration judge's] jurisdiction over the removal proceedings.'" *Pierre-Paul v. Barr*, 930 F.3d 684, 693 n.6 (5th Cir. 2019) (quoting *Sohani v. Gonzales*, 191 F. App'x 258, 259 (5th Cir. 2006)). Tamayac did not at that time object to the OSC or to the immigration court's jurisdiction, and conceded deportability as charged. Thus, in light of Tamayac's sworn contemporaneous admission and failure to object, the BIA did not err in determining that service of the OSC was proper.

## III.

Finally, Tamayac contends that the BIA violated 8 C.F.R. § 1003.1(d)(1)(ii) because it failed to consider the issue of whether the immigration judge's denial of *sua sponte* reopening was proper. He argues that such a failure violated the regulation, which provides that BIA "members shall exercise their independent judgment and discretion in considering and determining the cases coming before the [BIA]." 8 C.F.R. § 1003.1(d)(1)(ii).

No. 20-60138

But this court lacks jurisdiction to consider this issue because Tamayac did not file a motion for reconsideration with the BIA.  As we have explained in *Omari v. Holder*, when a "new issue" is introduced by the BIA's decision and "the BIA has an available and adequate means for addressing that issue, a party must first bring it to the BIA's attention through a motion for reconsideration." 562 F.3d 314, 320 (5th Cir. 2009); *see also Dale v. Holder*, 610 F.3d 294, 298 (5th Cir. 2010) (recognizing motions to reconsider as a jurisdictional prerequisite "where petitioner asserts a wholly new ground for relief arising only as a consequence of some error in the deportation proceedings"); *Martinez-Guevara v. Garland*, 27 F.4th 353, 360 (5th Cir. 2022) (affirming the rules in *Omari* and *Dale*).  The error that Tamayac alleges resulted from the BIA's decision and was never presented to the BIA in the first instance.  Thus, this court has no jurisdiction to consider the argument.

\* \* \*

For these reasons, we DENY in part and DISMISS in part the petition for review.