# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 11, 2022

Lyle W. Cayce
Clerk

No. 19-60275

Mohammed Abdelfattah Fakhuri,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 078 187 925

Before Smith, Costa, and Wilson, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Mohammed Fakhuri is a citizen of Jordan and lawful permanent resident of the United States. In 2018, he pleaded guilty of attempting to launder money in violation of Tennessee law. The federal government then charged him with removability for sustaining an "aggravated felony" conviction. 8 U.S.C. § 1227(a)(2)(A)(iii). After an Immigration Judge ("I.J.") and the Board of Immigration Appeals ("BIA") sustained that charge, Fakhuri petitioned for review. Because his claims are unexhausted or meritless, we deny in part and dismiss in part the petition.

No. 19-60275

I.

Police in Tennessee pulled over Fakhuri's RV after he committed several moving violations. When the officer asked Fakhuri—a California resident—what he was doing in Tennessee, Fakhuri said that he was visiting a cousin in Nashville. But Fakhuri was nervous when the officer asked for more details about his trip, and many of those details didn't add up.

The officer then searched Fakhuri's vehicle and discovered nearly $400,000 in cash locked in the RV's bathroom. Fakhuri claimed that he had won the money gambling, but its packaging and storage suggested it was the proceeds of drug trafficking.[1]

Fakhuri was arrested for participating in drug-trafficking activities. Ultimately, he agreed to plead guilty of attempting to launder money in violation of Tennessee Code Sections 39-É2-É01 ("Section 101") and 39-É4-ã03 ("Section 903").

The first of those provisions forbids attempting to commit a crime. The second prohibits five different forms of money laundering. Each of those money-laundering "offense[s]" is described in a separate subsection,[2] and each of those subsections contains its own penalty provision.[3] Fakhuri's plea agreement did not explicitly identify the part of Section 903 he had violated,

---

[1] Much of the cash was wrapped in cellophane or bubble wrap. Some of it was also stored in a ScentLok bag, which traffickers use to prevent drug-sniffing dogs from detecting drug residue on their cash.

[2] *E.g.*, TENN. CODE § 39-14-903(b)(1) ("It is an offense to knowingly use proceeds derived directly or indirectly from a specified unlawful activity with the intent to promote, in whole or in part, the carrying on of a specified unlawful activity.")

[3] *E.g.*, *id.* § 39-14-903(b)(2) ("A violation of this subsection (b) is a Class B felony.").

but the language of his indictment closely mirrored that of Subsection (b).[4]

Two months after Fakhuri pleaded guilty, the Attorney General initiated removal proceedings. As relevant here, he alleged that Fakhuri had been convicted of an "aggravated felony," thus making him removable under 8 U.S.C. § 1227(a)(2)(A)(iii). The definition of "aggravated felony" includes money-laundering offenses, *see* 8 U.S.C. § 1101(a)(43)(D), and attempts to commit an aggravated felony, *id*. § 1101(a)(43)(U). The Attorney General claimed that Section 903 qualified as a money-laundering offense under 8 U.S.C. § 1101(a)(43)(D) and that Fakhuri was therefore removable under 8 U.S.C. § 1101(a)(43)(U) for attempting to commit it.

An I.J. sustained that charge.[5] On appeal, the BIA agreed with the I.J. that Fakhuri had been convicted of an aggravated felony. It applied the categorical approach to determine whether Section 903 matched the generic definition of a money-laundering offense in 8 U.S.C. § 1101(a)(43)(D). *See Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016) (describing the categorical approach). Because "each subsection [of Section 903] carries its own sentencing structure," the BIA concluded that Section 903 was "divisible by subsection." It then examined Fakhuri's indictment, found that he had been convicted of attempting to violate Subsection (b), and held that Subsection (b) categorically matched the generic crime of money laundering. That

---

[4] Section 903(b) prohibits "knowingly us[ing] proceeds derived directly or indirectly from a specified unlawful activity with the intent to promote, in whole or in part, the carrying on of a specified unlawful activity." Fakhuri's indictment charged him with "knowingly . . . us[ing] proceeds derived directly or indirectly from an unlawful activity, to wit: [drug trafficking], with the intent to promote, in whole or in part, the carrying on of a [*sic*] unlawful activity, to wit: [drug trafficking]."

[5] The I.J. also pretermitted Fakhuri's request for cancellation of removal because that form of relief is categorically unavailable to any alien with an aggravated felony conviction. 8 U.S.C. § 1229b(a)(3).

No. 19-60275

led to the BIA's determination that Fakhuri was removable for sustaining an aggravated-felony conviction under 8 U.S.C. § 1101(a)(43)(U).

Fakhuri petitioned for review.

## III.

Before we can address the merits, we must verify that we have jurisdiction. *Ibrahim v. Garland*, 19 F.4th 819, 825 (5th Cir. 2021). One important limitation on our jurisdiction in immigration cases is the exhaustion requirement. If an alien hasn't exhausted his claims with the BIA, we don't have jurisdiction to address them. 8 U.S.C. § 1252(d)(1); *Ibrahim*, 19 F.4th at 825.

As relevant here, there are two ways that a claim can be exhausted. First, the alien can exhaust the claim by presenting it to the BIA. *Cruz Rodriguez v. Garland*, 993 F.3d 340, 345 (5th Cir. 2021) (per curiam). Second, the BIA can exhaust the claim by analyzing it on the merits—even if the alien didn't properly present it. *See Ibrahim*, 19 F.4th at 825.

Fakhuri advances five claims in his petition for review. Only two have been exhausted.

Fakhuri's first claim has been exhausted. Fakhuri maintains that Section 903 is not divisible. He pressed that claim to the BIA, which rejected it on the merits. *See Cruz Rodriguez*, 993 F.3d at 345.

Fakhuri's second claim has also been exhausted. Fakhuri tells us that even if Section 903 were divisible, Subsection (b) wouldn't be a categorical match with the generic crime of money laundering. The BIA analyzed that claim on the merits. *See Ibrahim*, 19 F.4th at 825.

But Fakhuri's last three claims have not been exhausted. He maintains that the I.J. and BIA erred by skipping the first step of the "modified categorical approach," that Subsection (b) does not "contemplate an element of 'attempt' at all," and that he cannot be removed for attempting to launder

No. 19-60275

drug money because he was never convicted of a drug offense. But Fakhuri never raised any of those claims in the brief he submitted to the BIA,[6] and the BIA never addressed them on its own. That means they are unexhausted, and we lack jurisdiction to consider them.

## IV.

### A.

Fakhuri first claims that Section 903 is indivisible. The BIA concluded the opposite. We agree with the BIA.

Recall that Section 903 prohibits five patterns of money laundering. Each of those "offense[s]" is set out in a separate subsection,[7] and each of those subsections specifies a distinct penalty.[8]

Based on that structure, the BIA concluded that Section 903 was divisible. Citing *Mathis*'s holding that a statute is divisible when its "alternatives carry different punishments," 136 S. Ct. at 2256, it reasoned that Section 903 is "divisible by subsection" because "each subsection carries its own sentencing structure."

Fakhuri, however, claims that Section 903's alternatives don't carry different punishments. In his telling, every subsection of the statute is punished the same way because all are "Class B" felonies. Section 903 just

---

[6] "If an alien submits a brief, '[it] becomes the operative document through which any issues that [he] wishes to have considered must be raised.'" *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018) (quoting *Claudio v. Holder*, 601 F.3d 316, 319 (5th Cir. 2010)).

[7] *E.g.*, TENN. CODE § 39-14-903(b)(1) ("It is an offense to knowingly use proceeds derived directly or indirectly from a specified unlawful activity with the intent to promote, in whole or in part, the carrying on of a specified unlawful activity.")

[8] *E.g.*, *id.* § 39-14-903(b)(2) ("A violation of this subsection (b) is a Class B felony.").

restates that penalty for each means of committing the offense.

The first problem for Fakhuri is that he misreads the statute. Different subsections of Section 903 *do* carry different punishments. Subsections (a), (b), and (c) are "Class B" felonies,[9] which are punishable with 8 to 30 years' imprisonment and a fine of $25,000.[10] But Subsection (d) is a "Class E felony" that is "punishable only by a fine of five thousand dollars"[11] and the forfeiture of the assets used to conduct or facilitate the crime.[12] And while Subsection (e) is a "Class B felony,"[13] it may also be punished with that type of forfeiture[14]—unlike Subsections (a), (b), and (c).[15] Because those "statutory alternatives carry different punishments," they must be different offenses—not different means of committing the same offense. *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

The second problem for Fakhuri—Section 903's structure—explains why Subsections (a), (b), and (c) cannot establish different means of committing a single offense while Subsections (d) and (e) create two other offenses. Like the BIA, our precedents have analyzed the structure of statutes to determine whether they are divisible. *See, e.g.*, *United States v. Butler*, 949 F.3d

---

[9] *Id*. § 39-14-903(a)(2), (b)(2), (c)(3).

[10] *Id*. § 40-35-111(b)(2).

[11] *Id*. § 39-14-903(d)(2).

[12] *Id*. § 39-14-903(g).

[13] *Id*. § 39-14-903(e)(2).

[14] *Id*. § 39-14-903(g).

[15] Section 903(g) states the assets used to conduct or facilitate a violation of Subsections (d) or (e) are subject to forfeiture. Thus, that form of forfeiture cannot be used to punish violations of Subsections (a), (b), and (c). *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107–11 (2012) (explaining *expressio unius est exclusio alterius*).

230, 234 (5th Cir. 2020). And Section 903's structure confirms the BIA's conclusion that the statute is divisible by subsection.

Section 903's subsections all have the same structure. Each defines an "offense" and its punishment separate from the other patterns of money laundering created by the statute. On its own, that strongly implies that each subsection is a separate offense.[16] But that implication becomes irrefutable when one remembers that Subsections (d) and (e) define distinct offenses. Absent another clue, it's impossible to believe that subsections with the *same* structure have *different* legal effects—three defining means of committing one offense, two defining separate offenses. Therefore, the BIA did not err in concluding that Section 903 is divisible by subsection.

## B.

Next, Fakhuri claims that Subsection (b) is not a categorical match with the generic crime of money laundering. Subsection (b) prohibits "us[ing] proceeds" of illegal activity to promote illegal activity. But the generic crime of money laundering prohibits only using such proceeds in a "financial transaction." 18 U.S.C. § 1956(a)(1)(A). Fakhuri says that difference means Subsection (b) does not categorically match 8 U.S.C. § 1101(a)(43)(D).[17]

We disagree. As the BIA observed, jurisdictional elements are "ignored" during a categorical analysis. *Torres v. Lynch*, 578 U.S. 452, 473 (2016). And the generic crime requires a "financial transaction" to establish

---

[16] *Cf. Butler*, 949 F.3d at 235 (noting that even a paragraph break within a subsection indicates that it contains multiple offenses).

[17] If he sought to advance any other explanations for why Subsection (b) is overbroad, he forfeited them "by failing to adequately brief [them]." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

a connection with "interstate or foreign commerce." *See* 18 U.S.C. § 1956(c)(4). Thus, the "financial transaction" element is merely a roundabout way of requiring that the crime affect interstate commerce. That's the classic example of a jurisdictional element, *see Torres*, 578 U.S. at 473, so the BIA didn't err in failing to hold that it made Subsection (b) overbroad.

What's more, Fakhuri's claim fails because he has not shown that there is a "realistic probability" Tennessee would apply Subsection (b) to conduct that doesn't involve a financial transaction. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To do that, he "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.*[18] As the BIA once observed and is still true, Fakhuri hasn't identified such an example from another case. Nor has he ever attempted to explain why his case falls outside the bounds of the generic crime.[19] Hence, the BIA did not err in concluding that Subsection (b) was a categorical match with the generic crime of money laundering.

The petition for review is DISMISSED to the extent it raises unexhausted claims. It is otherwise DENIED.

---

[18] *See also United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (en banc) (noting that there is "no exception" to the "requirement" that an alien point to an "actual case" involving nongeneric conduct).

[19] Even if it did, he has forfeited that claim. *See Rollins*, 8 F.4th at 397.