# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 29, 2021

Lyle W. Cayce
Clerk

No. 18-60828

Edith Nohemi Vazquez-Guerra; Wendy Chantal Barragan-Vazquez,

*Petitioners,*

*versus*

Merrick Garland, *U.S. Attorney General,*

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A208 538 244
BIA No. A208 538 791

Before Smith, Graves, and Ho, *Circuit Judges.*

James C. Ho, *Circuit Judge*:

Edith Vazquez-Guerra is a Mexican citizen who seeks asylum and withholding of removal for herself and her minor daughter, Wendy Barragan-Vazquez. Her application expressed a fear that, if she were returned to Mexico, she would be killed or tortured by the Zetas, a Mexican drug cartel, on account of her membership in a particular social group—her immediate family. The Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) determined, *inter alia*, that Vazquez-Guerra failed to establish a nexus

between either the harm she suffered or her fears of future persecution and her particular social group.  The IJ denied her application for asylum and withholding of removal, and the BIA dismissed the appeal.  Because Vazquez-Guerra does not demonstrate that substantial evidence compels a different conclusion, we deny her petition for review.

## I.

Vazquez-Guerra first entered the United States illegally in 2006 and subsequently married a lawful permanent resident.  While Vazquez-Guerra was living in the United States, her brother was allegedly beaten and kidnapped by the Zetas in front of their mother in June 2013 in Mexico.  Vazquez-Guerra returned to Mexico to visit her seriously ill mother in July 2015.

Shortly after her return to Mexico, Vazquez-Guerra contacted the city council and police to inquire about the kidnapping and disappearance of her brother.  She made three or four inquiries to the authorities about the status of the investigation but, each time, came away empty-handed.  She believes that the Zetas ultimately murdered her brother.

A few weeks later, in September 2015, masked men from the Zetas forced their way into Vazquez-Guerra's house while she was sleeping.  While pointing guns at her head, the men told her she "needed to quit looking for [her] brother," threatened that she "would meet his same fate" if she continued investigating, and "warned [her] not to go to police."

Days later, more "armed men" from the Zetas allegedly followed her in a pickup truck while she was in a taxi on her way to meet her daughter.  She exited the taxi, "fearing that they thought [she] was going to the downtown police station," and eluded them in a crowded shopping area.  She then fainted, suffered a nervous breakdown and a pre-stroke, and was hospitalized.

During her convalescence, Vazquez-Guerra fled to a neighboring city to hide. But the threats continued. Though she did not experience additional direct encounters with the Zetas, they "left [her] a message" in the form of "pieces of paper with things written on it" in which they warned that "if [she] continued to investigate about [her] brother . . . the same thing was going to happen to [her] . . . and all [her] family, one by one." Vazquez-Guerra's daughter was staying with her father at the time and was not subject to direct threats from the Zetas. The threats convinced Vazquez-Guerra that it was time to leave Mexico. She and her daughter arrived in the United States at the end of September 2015, whereupon they were apprehended by the Department of Homeland Security, Customs and Border Protection.

DHS served Vazquez-Guerra and her daughter a notice to appear charging them with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as aliens without valid entry documents at the time of application for admission. Vazquez-Guerra then filed an application for asylum and withholding of removal, expressing a fear that she would be killed or tortured by the Zetas if she were returned to Mexico on account of her membership in a particular social group—her immediate family.

## II.

The IJ denied Vazquez-Guerra's applications for asylum and withholding of removal, as well as the derivative application of her minor daughter. While the IJ found that Vazquez-Guerra was credible, it determined that the harm she experienced—"[a] few isolated incidents of harassment or intimidation unaccompanied by physical punishment, infliction of harm or significant deprivation of liberty"—"does not rise to the level of persecution." She therefore "failed to establish past persecution."

Even if Vazquez-Guerra could demonstrate past persecution, the IJ continued, she failed to produce "evidence of the requisite nexus between

No. 18-60828

any persecution . . . and any protected ground." It considered her proposed particular social group—her nuclear or immediate family—and determined that it was cognizable because she "is the sister of the brother who was kidnapped." However, the IJ concluded that the harm Vazquez-Guerra suffered at the hands of the Zetas was motivated by "criminal intention"— namely "to prevent her from investigating her brother's disappearance"— not by her "kinship to the Vazquez family." Thus, the protected trait was not "one central reason" for her purported persecution. The IJ found additional support for its conclusion in Vazquez-Guerra's testimony that "she has siblings . . . all living in Mexico . . . [and] [t]here was no testimony as to any harm that these siblings received by the Zetas." And, for the same reasons, the IJ determined that Vazquez-Guerra could not demonstrate a well-founded fear of future persecution on account of her membership in her nuclear family.

The IJ also denied Vazquez-Guerra's application for withholding of removal because she failed to establish eligibility for asylum and was thus unable to satisfy the higher standard for withholding of removal. Vazquez-Guerra and her daughter were ordered to be removed from the United States to Mexico, and she appealed.

The BIA dismissed the appeal. It found "no clear error in the [IJ]'s findings of fact." It then concluded that Vazquez-Guerra failed to "establish[] past persecution or a well-founded fear of persecution on account of any ground for asylum or withholding of removal" because the record "does not indicate that [her] membership in the Vazquez family was or will be at least one central reason for the harm she experienced or may suffer upon her return to Mexico."

While recognizing that an "alien's family may constitute a particular social group," the BIA determined that "the Zetas targeted [Vazquez-

No. 18-60828

Guerra] to prevent her from investigating her brother's disappearance," not because she was a member of her brother's family. It did not analyze whether Vazquez-Guerra's nuclear family constituted a particular social group before making its nexus determination. Rather, it assumed the cognizability of Vazquez-Guerra's purported particular social group (her nuclear family) and found that she failed to demonstrate a nexus between that group and any harm. It added that its conclusion is "further supported by the observation that [Vazquez-Guerra]'s siblings continue to live in Mexico without suffering any harm."

Finally, the BIA concluded that, because she is not eligible for asylum, she cannot meet the higher clear-probability-of-persecution standard required for withholding of removal. The BIA did not address other potential bases for denying relief, such as Vazquez-Guerra's subjective and objective fear of persecution, her purported past persecution, or her ability to reasonably and safely relocate within Mexico. Vazquez-Guerra timely filed a petition for review.

## III.

Vazquez-Guerra challenges both the denial of asylum and the denial of withholding of removal. We generally review only the final decision of the BIA, but where, as here, the BIA's decision is affected by the IJ's ruling, we also review the IJ's decision. *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016). We review questions of law de novo and factual findings for substantial evidence. *Id.* Under the substantial evidence standard, this court may not reverse an immigration court's factual findings unless the alien shows that "the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009).

5

No. 18-60828

## A.

We start with the denial of asylum. Under 8 U.S.C. § 1158(b)(1)(A), the Attorney General has discretion to grant asylum to refugees who meet certain requirements. *Sealed Petitioner*, 829 F.3d at 383. A refugee is "an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group.'"[1] *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1101(a)(42)). The protected ground must be "at least one central reason" for the persecution. *Sealed Petitioner*, 829 F.3d at 383 (quoting § 1158(b)(1)(B)(i)). While the protected ground, such as membership in a particular social group, "need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (quoting *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013)). We commonly refer to this as the "nexus requirement." *See*, *e.g.*, *Gonzales-Veliz v. Barr*, 938 F.3d 219, 229 (5th Cir. 2019).

Vazquez-Guerra argues that her nuclear family is a cognizable particular social group and that she has established a nexus between either the harm she suffered or her fears of future persecution and this protected group. Because the BIA and the IJ correctly determined that Vazquez-Guerra failed to establish that nexus, we deny her petition for review.

Throughout her briefing, Vazquez-Guerra states that the Zetas began threatening her after she started investigating her brother's disappearance

---

[1] We have defined persecution as "[t]he infliction of suffering or harm, *under government sanction*, upon persons who differ in a way regarded as offensive (*e.g.*, race, religion, political opinion, etc.), in a manner condemned by civilized governments." *Abdel-Masieh v. INS*, 73 F.3d 579, 583–84 (5th Cir. 1996) (emphasis added) (citation omitted). Neither the IJ, nor the BIA, nor the parties on petition to our court address this element so we do not address it either. This element obviously poses a potential additional barrier to relief.

and that they warned that "something similar would happen to her" if she did not stop investigating. Based on these facts, Vazquez-Guerra argues that, but for her familial relationship with her brother, she would not have investigated his disappearance and the Zetas would not be threatening her—and therefore her family status is one central reason for the threats.

This argument fails because it rests entirely on the motivations of Vazquez-Guerra, rather than the Zetas. Vazquez-Guerra was undoubtedly motivated to investigate the disappearance of her brother because of family status. But *her* motivation is irrelevant. The nexus test requires us to examine whether the protected ground is one central reason motivating the *persecutor*, not the *persecuted*. *Sealed Petitioner*, 829 F.3d at 383. In that regard, there is substantial record evidence that the Zetas threatened Vazquez-Guerra because she was investigating their actions—not because of any animus toward her family. Indeed, consistent with her application for asylum and her initial petition for review in this court, Vazquez-Guerra herself makes clear that each of the Zetas' threats centered on her continued investigation.

Vazquez-Guerra also relies on *Cruz v. Sessions*, 853 F.3d 122 (4th Cir. 2017). In that case, the court found a nexus between the threats the petitioner received and her investigation into her husband's disappearance. *Id.* at 130.

*Cruz* is distinguishable. Most notably, Cruz continued to receive threats for two years "*after* she promised [the drug trafficker] that she would not contact the police." *Id.* at 125, 129 (emphasis added). Nothing similar happened here. Vazquez-Guerra never made such a promise or expressed an inclination to stop investigating, and she provided no other evidence to indicate that the Zetas were ever motivated by anything other than putting a stop to her investigation.

Furthermore, while the Fourth Circuit observed that the lack of threats to other members of Cruz's family did not undermine her own fear of persecution, this court has found no persecution on account of family status where, *inter alia*, "other members of [petitioner's] family, who have remained in [her native country], have not faced persecution on the basis of their membership in the family." *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015). *See also Mejia-Oviedos v. Sessions*, 728 F. App'x 277, 279 (5th Cir. 2018) (noting that the fact that "petitioners' family has remained in [their native country] unharmed belies [their] assertion that they have a well-founded fear of persecution if they return") (citing *Eduard v. Ashcroft*, 379 F.3d 182, 193 (5th Cir. 2004) ("[F]ear of persecution is reduced when [petitioner's] family remains in [her] native country unharmed.")); *Cerritos-Quintanilla v. Barr*, 826 F. App'x 386, 390 (5th Cir. 2020) (noting that the petitioner's daughter remained in the native country and had not been harmed, threatened, or approached by gang members), *petition for cert. filed* (U.S. May 3, 2021) (No. 20-1529); *Maredia v. Holder*, 459 F. App'x 446, 447 (5th Cir. 2012) (asylum claim was "weaken[ed]" when petitioner's family members who remained in his native country "[had] not suffered any difficulties at the hands" of extremists). Vazquez-Guerra does not dispute that her siblings are all living in Mexico and that there is no evidence that they have been threatened or harmed by the Zetas.

The BIA and the IJ both correctly concluded that familial ties did not sufficiently motivate the Zetas to target Vazquez-Guerra. Rather, the record and Vazquez-Guerra's own statements make clear that the Zetas were primarily motivated by a desire to prevent her from investigating her brother's disappearance. *Cf. Ramirez-Mejia*, 794 F.3d at 493 ("[T]he evidence that gang members sought information from Ramirez–Mejia about her brother, without more, does not support her claim that the gang intended to persecute her on account of her family."). Threats or attacks motivated

by criminal intentions do not provide a basis for protection. *See Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004). Therefore, under the nexus test, Vazquez-Guerra's alleged protected trait—her particular social group—is, at best, "incidental, tangential, superficial, or subordinate to another reason for harm," not one central reason for the feared persecution. *Sealed Petitioner*, 829 F.3d at 383 (internal quotation marks and citation omitted). No reasonable factfinder would be compelled to conclude otherwise. *Wang*, 569 F.3d at 537. Accordingly, she has not established that she is eligible for asylum relief.[2]

**B.**

Next, we turn to the denial of withholding of removal. Unlike asylum, which is discretionary, withholding of removal is a mandatory form of relief for aliens who demonstrate a clear probability that their life or freedom would be threatened because of a protected ground, such as membership in a particular social group, if they were returned to the country of removal. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(2). The standard for obtaining withholding of removal "is even higher than the standard for asylum, requiring a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution" on one of the protected grounds. *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) (citing *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002)). Accordingly, "the failure to establish a well-founded fear for asylum eligibility also forecloses eligibility

---

[2] To the extent that Vazquez-Guerra's fear of future persecution in Mexico may be based on pervasive violence and unrest there, such conditions are not cognizable grounds for asylum. *See Eduard*, 379 F.3d at 190 ("[A]n applicant's fear of persecution cannot be *based solely* on general violence and civil disorder.").

for withholding of removal." *Id.* (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440–41 (1987)).

Despite Vazquez-Guerra's argument that withholding of removal involves a "less demanding" and "more relaxed" standard than asylum for meeting the nexus requirement, "this court has held that applicants for withholding of removal must similarly show that a protected ground, including membership in a particular social group, was or will be 'at least one central reason for persecuting the applicant.'" *Quinteros-Hernandez v. Sessions*, 740 F. App'x 57, 58 (5th Cir. 2018) (quoting *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018) (internal quotation marks, citation, and emphasis omitted)). An applicant who fails to establish eligibility for asylum also fails to establish eligibility for withholding of removal. *See*, *e.g.*, *Orellana-Monson*, 685 F.3d at 518 ("Because the asylum standard is more lenient than the standard for withholding of removal, the failure to establish a well-founded fear for asylum eligibility also forecloses eligibility for withholding of removal."). Thus, Vazquez-Guerra also fails to establish that she is eligible for withholding of removal.

\* \* \*

Because substantial evidence does not compel the conclusion that the nexus requirement is satisfied, we deny Vazquez-Guerra's petition for review.