# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2022

Lyle W. Cayce
Clerk

No. 20-61090
Summary Calendar

Jose Ruben Rodriguez-Alvarado; Cristhel Andersy Rodriguez-Avila,

*Petitioners*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A209 433 452
BIA No. A209 433 453

Before Southwick, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:*

Two natives and citizens of Honduras entered the United States illegally. They petition for review of the Board of Immigration Appeals

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-61090

decision affirming the Immigration Judge's denial of their claims for asylum and withholding of removal. The petition is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez-Alvarado unlawfully entered the United States with Cristhel Andersy Rodriguez-Avila, his daughter, on October 1, 2016. The next day, October 2, 2016, the Department of Homeland Security served both with Notices to Appear and charged them as removable. They admitted to the allegations in the Notice to Appear and conceded the removability charges. Rodriguez-Alvarado then applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Rodriguez-Avila was later added to Rodriguez-Alvarado's asylum application as a beneficiary and filed her own withholding of removal application.

On August 17, 2018, the Immigration Judge ("IJ") held a hearing on both Rodriguez-Alvarado and Rodriguez-Aliva's applications for relief. During this hearing, Rodriguez-Alvarado withdrew his CAT claim and testified why he and his daughter feared returning to Honduras. He testified he left Honduras because his daughter experienced frequent sexual harassment from a gang member. He believes if they return to Honduras, the gang will kill him because he took his daughter away from the harassing gang member. He also believes that his daughter will also suffer grave consequences.

Rodriguez-Alvarado learned in September 2015 that gang members were harassing his daughter by "surveil[ing] her constantly when she was coming to and from" school or church. He was aware of one gang member specifically that would sexually harass her "very frequently" by telling her "obscene things," such as that she had to have sex with him by force. Rodriguez-Alvardo was concerned for his daughter's safety, so he and his ex-wife decided to move his daughter to Rodriguez-Alvardo's father's house

2

rather than have her remain at his ex-wife's where the harassment was occurring.

One day after moving his daughter, he returned to his ex-wife's house to take his son to the doctor. He encountered the gang member who was harassing his daughter at the doctor's office. A child, who happened to be his wife's nephew, was with the gang member and gave Rodriguez-Alvarado a note that demanded money and threatened that "consequences for [him] would be worse" for him because he moved his daughter away. He testified that the note indicated if the gang member did not get the money he needed, the gang would "take it . . . out" on him, his daughter, or his son. It also warned him not to go to the authorities or "death would be quicker for [him] and for [his] children."

Rodriguez-Alvarado felt afraid after receiving the note and decided to give the gang money. Even though he gave them money, the gang member still threatened that if he did not return his daughter to his ex-wife's house, "it would go worse" for him. The gang member said he was specifically interested in his daughter and she "had to be theirs."

Rodriguez-Alvarado testified that he had another encounter with the gang in May 2016. His ex-wife called him to bring her daughter over to her home, and Rodriguez-Alvarado complied, allowing her to stay for a few days. Soon, he learned the gang's harassment continued and they tried "by force to take her away." Rodriguez-Alvarado took his daughter back to his father's house for safety. His wife's nephew then came to him again and told him that he would experience dire consequences if she was not returned and that the gang member who was harassing his daughter needed more money. This time, Rodriguez-Alvarado initially refused to provide money. The nephew did not accept his refusal, and Rodriguez-Alvarado eventually gave him a sum smaller than the first demand and agreed to give more later.

No. 20-61090

The gang continued harassing his daughter at school. Rodriguez-Alvarado did not seek help from police authorities because he believed the police were also involved in drug and gang activity. He did seek help from teachers at her school, but the teachers did not help because they viewed the harassment as a "normal thing." The gang also returned to his ex-wife's house, threatening that if Rodriguez-Alvarado did not return his daughter, the situation would worsen. Given the harassment his daughter was enduring at this point and after learning that a different young woman he knew was raped by a teacher and was never punished, Rodriguez-Alvarado decided to leave Honduras with his daughter.

The IJ found Rodriguez-Alvarado credible but denied his claims for asylum and withholding of removal. Rodriguez-Alvarado appealed to the Board of Immigration Appeals ("BIA"). The BIA affirmed the IJ's decision and dismissed his appeal.

## DISCUSSION

We review the BIA's "rulings of law *de novo*" and factual findings for substantial evidence. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). Factual findings are accepted "unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." *Mikhael v. INS*, 115 F.3d 299, 304 (5th Cir. 1997). We only consider the IJ's opinion if it influenced the BIA. *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018).

Rodriguez-Alvarado argues the BIA erred in affirming the IJ's denial of both his and his daughter's claims for asylum and withholding of removal. We begin by reviewing his asylum claim. To establish a claim for asylum, a petitioner must qualify as a "refugee" under 8 U.S.C. §§ 1101, 1158. A refugee is a person who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant must show "specific, detailed facts" to meet this burden and demonstrate the applicant suffered past persecution or has a well-founded fear of future persecution. *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) (quoting *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994)). Such showing relies on "(1) whether a group constitutes a cognizable particular social group; (2) whether there is a nexus between the harm and membership in the particular social group; and (3) whether the government is unable or unwilling to protect the alien." *Gonzales-Veliz v. Barr*, 938 F.3d 219, 228–29 (5th Cir. 2019).

Rodriguez-Alvarado says the experience he and his daughter endured constitutes past persecution based on a protected social group. He identifies that social group as "nuclear family" and "immediate family members of Cristhel Rodriguez-Avila." The BIA affirmed the IJ's decision that this was not a "particular social group" for purposes of asylum and therefore also for withholding of removal.

"A particular social group" is defined as a group that is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Jaco v. Garland*, 24 F.4th 395, 403 (5th Cir. 2021). Even if Rodriguez-Alvarado's particular social groups meet this definition, he must still show a nexus between the harm endured and the particular social group itself. *See Vazquez-Guerra v. Garland*, 7 F.4th 265, 269 (5th Cir. 2021). This means the applicant must show the protected ground was "at least one central reason for the persecution." *Id.* (quotation marks and citation omitted). The protected ground "need not be the only reason for harm, [but] it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013) (quoting *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009)).

No. 20-61090

In this case, we need not reach the question of whether "family members of Cristhel Rodriguez-Avila" constitute a particular social group. That is because Rodriguez-Alvarado and Rodriguez-Avila fail to show the harm they endured was on account of this family connection. Their case is similar to one in which an applicant argued she feared returning to Honduras because she feared she would be killed by the same individuals who murdered her brother. *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015). Her fear was based on anonymous death threats she received that demanded information her brother supposedly told her, and eventually led to the individuals opening fire on her father's business because she did not respond to the threats. *Id.* at 487, 493. We held she failed to meet the nexus requirement because the threats and violence, and therefore her fear, were sourced in the gang's desire to obtain information and not "hatred of [her] family." *Id.* at 493. We explained even though there were familial connections, those relations were incidental to the gang's informational-based motive and not the motivating cause of harm. *Id.*

Here, the purpose of the threats to Rodriguez-Alvarado and the harassment of his daughter was traced to one gang member's sexual interest in his daughter and not hatred for his daughter's family or other motivation specifically related to the family. Indeed, Rodriguez-Alvarado acknowledged in his testimony that "the primary motive of what happened was because of [his] daughter," referring to the gang's interest in her rather than the family itself. The gang members did involve various members of the daughter's family in their effort to pursue her, but that involvement was incidental to the gang members' interest in her. Family membership was not the motivating factor behind the harm. Rodriguez-Alvarado and Rodriguez-Avila therefore have not shown that there was any nexus between the harm endured and a particular social group. They thus cannot state cognizable claims for asylum.

No. 20-61090

Rodriguez-Alvarado and Rodriguez-Avila also challenge the BIA's denial of their claims for withholding of removal. They contend the BIA abused its discretion because it affirmed denial of their withholding of removal claims without any reasoning, instead summarily concluding that they could not establish claims for withholding of removal because they failed to establish the nexus requirement for asylum.

The BIA did not abuse its discretion. "To qualify for withholding of removal, an applicant must establish that it is more likely than not that his life or freedom would be threatened in the proposed country of removal due to his race, religion, nationality, membership in a particular social group, or political opinion." *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (quotation marks and citation omitted). This poses a higher bar for the applicant than showing a well-founded fear of persecution for asylum because the applicant must show a "clear probability of persecution upon return" and not just a well-founded fear of persecution as asylum requires. *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (quotation marks and citation omitted). Rodriguez-Alvarado and Rodriguez-Avila could not demonstrate these elements because they failed to show they even had a well-founded fear of persecution. They therefore are unable to meet the higher threshold for withholding of removal. The BIA did not err in affirming denial of these claims by relying on its asylum analysis.

The petition is DENIED.