# United States Court of Appeals for the Fifth Circuit

---

No. 20-60974

---

Heystin Jesus Lopez-Aguilar,

United States Court of Appeals
Fifth Circuit

**FILED**
March 31, 2023

Lyle W. Cayce
Clerk

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

---

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A206 421 355

---

Before Richman, *Chief Judge*, and Elrod and Oldham, *Circuit Judges*.
Per Curiam:*

Heystin Jesus Lopez-Aguilar petitions for review of a decision of the Board of Immigration Appeals (BIA) upholding an immigration judge's (IJ) denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He argues that the BIA erred by determining that he had not demonstrated the required nexus between his persecution and his membership in a particular social group (PSG) without

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

first deciding whether his proposed PSG was cognizable; that the BIA applied the wrong legal standard to his claim for withholding of removal; and that the BIA applied the wrong legal standard to his CAT claim and erred in determining he was ineligible for CAT protection.  Because Lopez-Aguilar's first argument remains unexhausted, we dismiss his petition as to that claim for lack of jurisdiction.  The BIA applied the correct legal standards to Lopez-Aguilar's withholding of removal and CAT claims, and substantial evidence supports the BIA's factual conclusions regarding his ineligibility for CAT protection.  We therefore deny Lopez-Aguilar's petition as to those claims.

## I

Lopez-Aguilar, a citizen and native of Honduras, entered the United States unlawfully in 2014.  After being apprehended by U.S. Border Patrol agents, Lopez-Aguilar—then fifteen years old—was served with a notice to appear, charging that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as being an "alien present in the United States without being admitted or paroled . . . ."  Lopez-Aguilar conceded the charge but applied for asylum and withholding of removal based upon persecution on account of his membership in a PSG.  He also sought protection under the CAT.

In 2018, an IJ held a hearing regarding Lopez-Aguilar's three claims for relief.  Lopez-Aguilar, who was then nineteen, testified that his parents had departed Honduras for the United States when he was three, leaving him and his brother in the care of a family friend named Oscar.  According to Lopez-Aguilar, Oscar, a gang member, systematically abused him for thirteen years until Lopez-Aguilar fled to the United States.  Lopez-Aguilar also claimed that other gang members—friends of Oscar's—attempted to recruit him into the gang and assaulted him when he refused.  Lopez-Aguilar stated

that he feared he would suffer further abuse or death at the hands of Oscar and the other gang members if returned to Honduras.

In support of his applications, Lopez-Aguilar submitted—among other items—affidavits from witnesses to Oscar's abuse and an expert declaration describing the vulnerability of Honduran children and the Honduran government's inability to protect them.

Despite finding Lopez-Aguilar credible, the IJ denied his applications for relief and ordered him removed to Honduras. With respect to Lopez-Aguilar's claims for asylum and withholding of removal, the IJ concluded that Lopez-Aguilar was a "victim of a crime" and had therefore not made the required showing that he was "subjected to persecution based on a protected ground." The IJ also denied relief under the CAT because the abuse Lopez-Aguilar suffered did not "rise[] to the level of torture" and was not "carried out" or "condone[d]" by a government official.

Lopez-Aguilar appealed to the BIA, arguing only that his proposed PSG was cognizable. The BIA dismissed Lopez-Aguilar's appeal. In a brief opinion, it affirmed the IJ's denial of Lopez-Aguilar's asylum claim because he feared "harm due to no other apparent reason than criminal gang activity" and therefore "ha[d] not shown that he [would] be harmed on account of his membership in a particular social group." For the same reason, the BIA determined that Lopez-Aguilar "also did not satisfy the higher burden of proof for withholding of removal." Finally, the BIA agreed with the IJ that Lopez-Aguilar did not qualify for CAT protection because he "did not show that he more likely than not . . . will face torture by or with the consent or acquiescence (including willful blindness) of any public official . . . ." Lopez-Aguilar subsequently petitioned this court for review.

Lopez-Aguilar makes three primary claims to this court. First, Lopez-Aguilar alleges the BIA erred by determining he had not demonstrated

No. 20-60974

the required nexus between his persecution and membership in a PSG without first deciding whether his proposed PSG was cognizable. Second, he claims the BIA applied the wrong legal standard to his claim for withholding of removal. Finally, he challenges the legal standard used to assess his CAT claim, as well as the substantive determination that he is ineligible for CAT protection.

## II

"[J]urisdiction is always first."[1] Before we can reach the merits of Lopez-Aguilar's claims, we must determine whether we have jurisdiction to address them.[2] "We examine our jurisdiction on our own motion when necessary."[3]

The Immigration and Nationality Act (INA) confers on the courts of appeals exclusive jurisdiction to review final orders of removal.[4] It does not, however, give us carte blanche. We may only exercise jurisdiction when an alien has "exhausted all administrative remedies available . . . as of right . . . ."[5] "A remedy is available as of right if (1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim."[6] The exhaustion requirement reduces "the risk that we must prolong a proceeding by reversing to correct errors

---

[1] *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (alteration in original) (quoting *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021)).

[2] *Mejia v. Whitaker*, 913 F.3d 482, 487 (5th Cir. 2019).

[3] *Id.*

[4] 8 U.S.C. § 1252(a)(5).

[5] 8 U.S.C. § 1252(d)(1); *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009) (quoting 8 U.S.C. § 1252(d)).

[6] *Omari*, 562 F.3d at 318-19.

No. 20-60974

that the [BIA] had no chance to address"[7] and  permits the BIA to apply its "expertise in immigration matters . . . in the first instance."[8]  A "[f]ailure to exhaust an issue creates a jurisdictional bar as to that issue."[9]

An alien may exhaust a claim by raising it "in the first instance before the BIA . . . on direct appeal . . . in a motion to reopen,"[10] or "on a motion to reconsider."[11]  Whether an alien must file a motion for reconsideration before petitioning the court depends on the "posture" of the relevant claim "before the BIA."[12]  When a claim is "raised or lost at the BIA," it is exhausted, and no motion for reconsideration is required.[13]   But "[a] motion for reconsideration is . . . confined to the substance of the BIA's original decision."[14]  Therefore, when a new issue arises solely from "the BIA's act of decisionmaking" such that "neither party could have possibly raised [it] prior to the BIA's decision," the alien "must first bring it to the BIA's attention through a motion for reconsideration."[15]

As we have noted, however, the purpose of the exhaustion requirement is to give the BIA the first "chance to address" any errors that may arise during immigration proceedings.[16]  Because of this, when the BIA

---

[7] *Martinez-Guevara v. Garland*, 27 F.4th 353, 359 (5th Cir. 2022).

[8] *Omari*, 562 F.3d at 322.

[9] *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) (per curiam).

[10] *Id.* (quoting *Wang v. Ashcroft*, 260 F.3d 448, 453 (5th Cir. 2001)).

[11] *Martinez-Guevara*, 27 F.4th at 360.

[12] *Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010).

[13] *Martinez-Guevara*, 27 F.4th at 360.

[14] *Omari v. Holder*, 562 F.3d 314, 319 (5th Cir. 2009).

[15] *Id.* at 320-21.

[16] *See Martinez-Guevara*, 27 F.4th at 359.

itself "chooses to address an issue on the merits," it is exhausted "despite potential defects in its posture . . . ."[17] We consider each of Lopez-Aguilar's claims against these standards.

## A

Lopez-Aguilar first argues that the BIA erred in dismissing his claim for asylum on the grounds that no nexus exists between his persecution and membership in a PSG without first deciding whether Lopez-Aguilar is a member of a cognizable PSG.

Asylum is a discretionary grant of relief available to "refugees who meet certain requirements."[18] The INA defines a refugee as "an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of'" a statutorily protected ground, including "membership in a particular social group . . . ."[19] To prevail on an asylum claim, an alien must therefore show both that the PSG in which he claims membership is "cognizable" within the meaning of the INA and that there is a nexus between his persecution and membership in that group.[20] The "nexus requirement" is satisfied when membership in a PSG is "one central reason" for the alien's persecution.[21] A PSG is cognizable when it is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially

---

[17] *Lopez-Dubon*, 609 F.3d at 644.

[18] *Vazquez-Guerra v. Garland*, 7 F.4th 265, 268-69 (5th Cir. 2021).

[19] *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1101(a)(42)(A)).

[20] *See Vazquez-Guerra*, 7 F.4th at 269.

[21] *Id.* (quoting *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016)); 8 U.S.C. § 1158(b)(1)(B)(i).

distinct within the society in question."[22] The group must also "exist independently of the fact of persecution."[23]

Lopez-Aguilar contends that the agency erred in its application of two cases, *Matter of A-B-*[24] and *Orellana-Monson v. Holder*,[25] in determining that he had not demonstrated he would be harmed "on account of his membership in a particular social group." The thrust of his argument, however, is that the BIA and the IJ erred by making this determination without first deciding whether his proposed PSG was cognizable. The Government, for its part, insists that the agency can dispose of an asylum claim on nexus grounds alone and without consideration of whether a proposed PSG is cognizable.

Either way, Lopez-Aguilar has not exhausted this claim. He filed but a single document with the BIA—his notice of appeal—and that document contained but a single claim: "Previously the BIA has affirmed the same PSG used in the instant case to be cognizable . . . 'minors without resources who have been abused by a custodial parent/guardian.' Here, the Respondent is also from Honduras and the facts are substantially similar." He submitted no briefing to the BIA,[26] and filed no motion to reopen. He therefore failed to present the issue to the BIA on direct appeal.

This is also not a "new issue" arising only from the "BIA's act of decisionmaking," and which "neither party could have possibly raised prior

---

[22] *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014).

[23] *Id.* at 236 n.11.

[24] 27 I. & N. Dec. 316 (A.G. 2018).

[25] 685 F.3d 511 (5th Cir. 2012).

[26] *See, e.g.*, *Omari v. Holder*, 562 F.3d 314, 319 (5th Cir. 2009).

to the BIA's decision."[27]   The IJ demonstrated that he denied asylum without considering Lopez-Aguilar's PSG when he declared in his oral opinion, "I don't remember the exact formulation . . . as to the composition of this group . . . [but] he was not subjected to persecution based on a protected ground." Given the clear basis of the IJ's judgment, Lopez-Aguilar could easily have raised to the BIA the claim that the agency may not make a nexus determination without first assessing the propriety of a proposed PSG. Even if it were a "new issue" before the BIA, however, Lopez-Aguilar would have been required to file a motion for reconsideration, which he failed to do.[28]

The BIA also did not consider this issue of its own accord. Its decision merely reiterated the IJ's, stating that "regardless of whether the respondent has shown that that he belongs to a cognizable particular social group, he has not established eligibility for asylum."

Because Lopez-Aguilar did not avail himself of the "full and fair opportunity to present" this claim to the BIA,[29] the claim remains unexhausted, and we lack jurisdiction to consider it. To the extent that Lopez-Aguilar also claims that the BIA or IJ "ignor[ed]" or "mischaracterized the [r]ecord," he did not raise this issue in any form before the BIA, and it too remains unexhausted.[30]

---

[27] *Id.* at 320-21.

[28] *See id.* at 320.

[29] *See id.* at 323.

[30] *See id.*, 562 F.3d at 320-21; *cf. Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) (claim that the BIA ignored evidence was exhausted because petitioner asked BIA to correct IJ's identical error).

No. 20-60974

## B

Lopez-Aguilar next claims that the BIA and the IJ erred by applying an incorrect legal standard to his claim for withholding of removal under 8 U.S.C. § 1231(b)(3), which, like asylum, requires a nexus between an alien's persecution and a statutorily protected ground, such as membership in a PSG.[31] Lopez-Aguilar contends that the standard for establishing a nexus for withholding of removal is distinct from and more permissive than the corresponding standard in asylum claims. Lopez-Aguilar argues, therefore, that the BIA and the IJ improperly denied his withholding claim by impermissibly conflating these standards when they determined, after denying his asylum claim on nexus grounds, that he necessarily failed to qualify for withholding of removal.

At first glance, "one might think we lack jurisdiction."[32] Lopez-Aguilar could have presented this claim on direct appeal to the BIA based on the IJ's decision, yet he did not, and he also filed no motion for reconsideration. Still, we think otherwise.

Ordinarily, a claim of legal error such as this would require review by the BIA on a motion for reconsideration before we could assert jurisdiction.[33] As we have said, however, the BIA's choice to "address an issue on the

---

[31] *Vazquez-Guerra v. Garland*, 7 F.4th 265, 270-71 (5th Cir. 2021).

[32] *Martinez-Guevara*, 27 F.4th at 360.

[33] *See, e.g.*, *Rodriguez Hernandez v. Barr*, 770 F. App'x 669, 670 (5th Cir. 2019) (unpublished) (per curiam) (quoting *Omari*, 562 F.3d at 320-21) (explaining that a "claim that the BIA relied on an erroneous legal standard is an issue 'stemming from BIA's act of decisionmaking'" and therefore must be raised "in a motion to reopen or for reconsideration to satisfy the exhaustion requirement."); *see also Omari* 562 F.3d at 320 (explaining that a motion for reconsideration may allege errors of "fact or law.").

9

merits despite potential defects in its posture" exhausts that issue.[34]  In his decision, the IJ applied the same nexus standard to both Lopez-Aguilar's asylum and withholding of removal claims, noting that because "Respondent failed to meet the burden of proof for establishing an asylum claim, he has necessarily also failed to meet the higher burden of proof required for withholding of removal . . . ."

The BIA adopted the IJ's determination and reasoning and concluded that because Lopez-Aguilar "has not established eligibility for asylum[,] [i]t follows that the respondent also did not satisfy the higher burden of proof for withholding of removal."  Though it did not say explicitly that the nexus standards for withholding of removal and asylum are the same, we are permitted to make reasonable inferences as to the bases for the BIA's judgments.[35]  The BIA had the "opportunity to apply its specialized knowledge" to the IJ's use of the same nexus standard for both claims.[36]  It similarly applied the same standard to both in affirming the IJ's decision.

Though Lopez-Aguilar never affirmatively brought his claim regarding the nexus standard for withholding of removal before the BIA, the BIA "addressed the issue on the merits . . . ."[37]  The issue is therefore exhausted, and we have jurisdiction to entertain it.

## C

Finally, Lopez-Aguilar avers that the BIA erred in denying him CAT protection because it applied an incorrect legal standard to his claim.

---

[34] *Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010).

[35] *See Manzano-Garcia v. Gonzales*, 413 F.3d 462, 468 (5th Cir. 2005) (per curiam).

[36] *Lopez-Dubon*, 609 F.3d at 644 (quoting *Sidabutar v. Gonzales*, 503 F.3d 1116, 1121 (10th Cir. 2007)).

[37] *Id.*

Specifically, he suggests that the BIA required him to demonstrate that government officials are "willfully accepting" of torture, but that he need only make the lesser showing that government officials are aware or willfully blind to torture and are either unable or unwilling to intervene. He also challenges the BIA's determination that he is ineligible for CAT protection.

As above, an allegation of legal error such as this would ordinarily require review by BIA on a motion for reconsideration before we could exercise jurisdiction over it.[38] In this case, however, BIA expressly recited the legal standard against which it assessed Lopez-Aguilar's CAT claim. The BIA's decision noted that "the respondent did not show that he more likely than not . . . will face torture by or with the consent or acquiescence (including willful blindness) of any public official . . . ."

The BIA having considered and addressed the proper legal standard for Lopez-Aguilar's CAT claim, as well as his eligibility for CAT protection, we conclude that these issues are exhausted and that we have jurisdiction to consider them.[39]

---

[38] *Omari*, 562 F.3d at 320.

[39] *Lopez-Dubon*, 609 F.3d at 644.

No. 20-60974

## III

We now turn to the merits of Lopez-Aguilar's claims regarding the nexus standard in withholding of removal, the legal standard for CAT protection, and his eligibility for withholding under the CAT.

## A

Lopez-Aguilar contends that BIA and the IJ erred by applying an improper legal standard for the nexus requirement to his claim for withholding of removal under 8 U.S.C. § 1231(b)(3).

Though we "typically only review the final decision of the BIA,"[40] "[w]hen, as in the present case, the BIA's decision is affected by the IJ's ruling . . . we also review the IJ's decision."[41]   "We review the BIA's conclusions of law *de novo*," including claims that the BIA applied an incorrect legal standard.[42]

"[W]ithholding of removal is a mandatory form of relief for aliens" that meet certain statutory requirements.[43]  To qualify for withholding under 8 U.S.C. § 1231(b)(3), aliens must "demonstrate a clear probability that their life or freedom would be threatened because of a protected ground, such as membership in a particular social group, if they were returned to the country of removal."[44]   Accordingly—and as with asylum claims—the alien must establish a nexus between his persecution and his membership in a PSG.[45]

---

[40] *Parada-Orellana v. Garland*, 21 F.4th 887, 893 (5th Cir. 2022).

[41] *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016).

[42] *See Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002).

[43] *Vazquez-Guerra v. Garland*, 7 F.4th 265, 270 (5th Cir. 2021).

[44] *Id.*; 8 U.S.C. § 1231(b)(3)(A).

[45] *See Vazquez-Guerra*, 7 F.4th at 270-71.

No. 20-60974

Lopez-Aguilar urges that the statutes governing asylum and withholding of removal are "unambiguously different" in that the legal standard for establishing a nexus in withholding of removal claims—unlike in asylum claims—does not require a showing that a statutorily protected ground is "one central reason" for an alien's persecution.[46] On this basis, he concludes that the nexus requirement in withholding of removal claims is "less stringent" than that in asylum claims. Because the standards are different, he suggests, the BIA and IJ should have analyzed each claim independently and provided further explanation regarding its nexus determination.

On its face, Lopez-Aguilar's statement regarding the relevant statutes is correct. 8 U.S.C. § 1158(b)(1)(B)(i), which sets forth the standard for demonstrating a nexus in asylum claims, explicitly declares that a statutorily protected ground must be "*one central reason*" for an alien's persecution.[47] In contrast, 8 U.S.C. § 1231(b)(3)(C), elaborating on the burden of proof for withholding of removal, describes how a trier of fact might determine that the alien "would be threatened for *a reason*" enumerated elsewhere in the statute, including membership in a PSG.[48] Relying on out-of-circuit precedent, Lopez-Aguilar interprets these differences to mean that withholding of removal requires a "less demanding standard" for showing a nexus—"a reason"—than does asylum—"one *central* reason."[49] While

---

[46] *See* 8 U.S.C. § 1158(b)(1)(B)(i) (For asylum, an "applicant must establish that . . . membership in a particular social group . . . was or will be at least one central reason for persecuting the applicant.").

[47] 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added).

[48] 8 U.S.C. § 1231(b)(3)(C) (emphasis added); *see also* 8 U.S.C. § 1231(b)(3)(A).

[49] *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017); *see also* 8 U.S.C. § 1231(b)(3)(C); 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added).

Lopez-Aguilar may be correct that the courts of appeals are divided on this question,[50] the law in this circuit is unambiguous and squarely forecloses his argument.

Indeed, we recently denied a petition for review on nearly identical grounds to those on which the BIA dismissed Lopez-Aguilar's withholding of removal claim. In *Vazquez-Guerra v. Garland*,[51] we rejected the petitioner's argument that "withholding of removal involves a 'less demanding' and 'more relaxed' standard than asylum for meeting the nexus requirement . . . ."[52] We have previously noted that the "key difference in the standards for asylum and withholding of removal" is not the nexus requirement, but the burden of proof for demonstrating future persecution.[53] While asylum requires only a "well-founded fear" of persecution, withholding of removal requires the heightened showing of a "clear probability."[54] The nexus requirement, however, is the same for both—a statutorily protected ground must be "one central reason" for the alien's

---

[50] *Compare Barajas-Romero*, 846 F.3d at 360 (holding that "'a reason' is a less demanding standard than 'one central reason.'"), *and Guzman-Vazquez v. Barr*, 959 F.3d 253, 272 (6th Cir. 2020) (same), *with Gonzalez-Posadas v. Att'y Gen. U.S.*, 781 F.3d 677, 684-85 (3d Cir. 2015) (requiring a showing that membership in a PSG is "one central reason" for an alien's persecution for the purposes of withholding of removal).

[51] 7 F.4th 265 (5th Cir. 2021).

[52] *Id.* at 271.

[53] *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018).

[54] *Id.*

No. 20-60974

persecution.[55]  Therefore, "[a]n applicant who fails to establish eligibility for asylum also fails to establish eligibility for withholding of removal."[56]

Lopez-Aguilar relies in part on the Supreme Court's decision in *I.N.S. v. Cardoza-Fonseca*[57] to support his contention that asylum and withholding of removal claims involve distinct standards for establishing a nexus to persecution, but this reliance is misplaced.  In *Cardoza-Fonseca*, the Court concluded, as we have noted, that withholding of removal and asylum involve different burdens of proof for future persecution.[58]  The case says nothing, however, about the standard for establishing a nexus between persecution and a statutorily protected ground.

Because our circuit's case law clearly requires that the same "one central reason" standard for establishing a nexus between persecution and membership in a PSG be applied to both asylum and withholding of removal claims,[59] we deny Lopez-Aguilar's petition with respect to this argument.

We express no opinion as to whether Lopez-Aguilar has in fact satisfied the nexus requirement for withholding of removal—or, for that matter, asylum.  Though the Government argues that Lopez-Aguilar has forfeited a challenge to the agency's nexus determination by failing to raise it in his opening brief to this court, we disagree;  Lopez-Aguilar couches his

---

[55] *Id.* (using the "one central reason" nexus test for a withholding of removal claim); *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)) (same); *see also Matter of C-T-L-*, 25 I. & N. Dec. 341, 348 (BIA 2010).

[56] *Vazquez-Guerra v. Garland*, 7 F.4th 265, 271 (5th Cir. 2021).

[57] 480 U.S. 421 (1987).

[58] *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 430, 449 (1987).

[59] *Vazquez-Guerra*, 7 F.4th at 271 (quoting *Quinteros-Hernandez v. Sessions*, 740 F. App'x 57, 58 (5th Cir. 2018) (unpublished) (per curiam)).

arguments regarding the agency's substantive nexus holding within his claims involving the failure to assess his proposed PSG and the legal standard for withholding of removal.

Nevertheless, Lopez-Aguilar *has* forfeited the separate issue of whether his proposed PSG is cognizable.[60] Deciding the nexus issue directly would therefore implicitly require us to either consider a forfeited argument or render an opinion on whether the agency may make a nexus determination without first assessing whether a proposed PSG is cognizable—a question we lack jurisdiction to entertain.

## B

Lopez-Aguilar next argues that the BIA applied an incorrect legal standard to his CAT claim. He also challenges the BIA's factual conclusion that he is ineligible for CAT protection.

Again, "[w]e review the BIA's conclusions of law *de novo*" including claims that the BIA applied an incorrect legal standard.[61] "We review . . . the IJ and the BIA['s] . . . factual findings for substantial evidence."[62] Eligibility for CAT protection is one such factual finding.[63] Under this deferential standard, we reverse only when "the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief."[64] Indeed, even if "a reasonable factfinder *could* have found [the facts]

---

[60] *See, e.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by . . . failing to adequately brief [it] on appeal."); *see also* FED. R. APP. P. 28(a)(8)(A).

[61] *See Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002).

[62] *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016).

[63] *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

[64] *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013) (quoting *Arif v. Mukasey*, 509 F.3d 677, 679 (5th Cir. 2007) (per curiam)); 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative

sufficient" to reach a result contrary to the agency's, it does not follow that "a factfinder would be compelled to do so."[65]

"[R]elief under the Convention Against Torture requires a two part analysis—first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture."[66] To satisfy the state action requirement, torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official . . . ."[67] "Acquiescence . . . requires that the public official . . . have awareness of such activity and . . . breach his or her legal responsibility to intervene . . . ."[68] "[A]wareness requires . . . either actual knowledge or willful blindness."[69] "Willful blindness means . . . aware[ness] of a high probability of . . . torture and deliberately avoid[ing] learning the truth . . . ."[70] Finally, the regulations note that, "No person will be deemed to have breached a legal responsibility to intervene if such person is unable to intervene . . . ."[71]

---

findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . .").

[65] *Mikhael v. I.N.S.*, 115 F.3d 299, 304 (5th Cir. 1997) (emphasis in original).

[66] *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350-51 (5th Cir. 2006) (footnote omitted).

[67] 8 C.F.R. § 1208.18(a)(1).

[68] 8 C.F.R. § 1208.18(a)(7).

[69] *Id.*; *see also Hakim v. Holder*, 628 F.3d 151, 155 (5th Cir. 2010) ("[A]cquiescence is satisfied by a government's willful blindness of tortuous activity." (internal quotation marks omitted)).

[70] 8 C.F.R. § 1208.18(a)(7).

[71] *Id.*

Before the IJ, Lopez-Aguilar testified that Oscar had beaten him with "belts, cables, and branches" from the time he was three years old until he fled to the United States at age fifteen. He further alleged that friends of Oscar's, who were members of a gang, assaulted him when he refused to join the gang, in one instance fracturing his shin. He stated that Oscar squandered money intended for him, sexually abused him, and once threatened him with a gun to prevent him from reporting the abuse to his mother. He stated that he feared that if returned to Honduras, he risked further abuse, and possibly death, at the hands of Oscar and the other gang members. Lopez-Aguilar acknowledged that he never reported Oscar's abuse to the police.

Considering this testimony, the IJ denied Lopez-Aguilar's claim for protection under the CAT on two grounds: first that the abuse Lopez-Aguilar suffered did not meet the definition of torture, and second, that it was not "carried out" or "condone[d]" by the Honduran government. The BIA affirmed the IJ's conclusion that it was not "more likely than not . . . that [Lopez-Aguilar] will face torture by or with the consent or acquiescence (including willful blindness) of any public official," noting in particular that Lopez-Aguilar had not shown he was ever tortured by any government official or that "any public official in Honduras seeks to torture him . . . ."

Lopez-Aguilar alleges that the BIA applied the wrong legal standard to his CAT claim by requiring him to show that the Honduran government was "willfully accepting" of torture as opposed to merely aware of or willfully blind to it and unable or unwilling to intervene. This necessarily implicates the factual finding that he is ineligible for CAT protection. In support of his argument, Lopez-Aguilar asserts that the type of abuse he suffered is systemic in Honduras and that the government is unable to address it.

No. 20-60974

On its face, the BIA's decision approximated the correct standard for protection under the CAT. It required that Lopez-Aguilar demonstrate a likelihood of torture "with the consent or acquiescence (including willful blindness)" of a Honduran public official and relied on controlling authority in doing so.[72] While this articulation did not consider the "actual knowledge" of Honduran authorities,[73] the record does not compel reversal under either theory.

Our circuit's precedent has consistently held that "potential instances of violence committed by non-governmental actors . . . together with speculation that the police might not prevent that violence, are generally insufficient to prove government acquiescence . . . ."[74] This is particularly true when the government has taken "meaningful steps to address" the abuses alleged.[75]

In light of these principles, our recent decision in *Tabora Gutierrez v. Garland*[76] provides a yardstick for assessing Lopez-Aguilar's CAT claim. In that case, as here, the petitioner fled to the United States from the violence

---

[72] *See, e.g.*, *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493-94 (5th Cir. 2015).

[73] 8 C.F.R. § 1208.18(a)(7).

[74] *Garcia v. Holder*, 756 F.3d 885, 892 (5th Cir. 2014).

[75] *Tabora Gutierrez v. Garland*, 12 F.4th 496, 505 (5th Cir. 2021); *see also Garcia*, 756 F.3d at 892 (speculation regarding police inability to control private violence insufficient for acquiescence when "there is evidence that the government prosecutes rogue or corrupt public officials."); *Chen v. Gonzales*, 470 F.3d 1131, 1142-43 (5th Cir. 2006) ("[G]overnment efforts to combat corruption or abuse . . . [are] relevant to the willful blindness inquiry." Given that the government prosecuted human smugglers and corrupt public officials, substantial evidence supported the conclusion that the government did not acquiesce in torture).

[76] 12 F.4th 496.

of Honduran gangs.[77]  For his persistent refusal to join or pay off the gang, the petitioner was brutally beaten, stabbed, shot multiple times, and repeatedly threatened with death.[78]  Though he reported at least three of these incidents to police, authorities informed him either that he lacked sufficient proof of his allegations, that they could not help him, or that they themselves feared documenting reports of gang violence.[79]  Ultimately, the very people from whom the petitioner sought refuge advised him to leave Honduras.[80]

Despite the brutality inflicted upon the petitioner and the Honduran authorities' utter failure to protect him, the IJ ordered him removed to Honduras.[81]  The BIA concluded that the police were not willfully blind to the petitioner's treatment by the gangs, pointing in part to evidence of the government's efforts—albeit largely unsuccessful—to combat gang violence and corruption.[82]  The petitioner's mere "speculation that officers would not protect him in the future" was therefore insufficient to show acquiescence.[83]  Acknowledging that the BIA and IJ might have concluded otherwise, we denied the petition for review because the record did not "compel them to do so."[84]  This reasoning is fatal to Lopez-Aguilar's claim.

---

[77] *Id.* at 498-99.

[78] *Id.* at 499.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 498.

[82] *Id.* at 500, 504-505.

[83] *Id.* at 500-01 (internal quotation marks omitted).

[84] *Id.* at 505-06.

Unlike the petitioner in *Tabora Gutierrez*, Lopez-Aguilar acknowledged that he never attempted to report to the police any of the violence that Oscar perpetrated against him because "[he] was afraid." His assertion that "the Honduran Government is not able to stop the type of harm" he suffered therefore amounts to the same "speculation" we have acknowledged as insufficient for government acquiescence in our prior cases.[85] Indeed, we would be "hard-pressed to find [even] that the authorities were unable or unwilling to help . . . if [Lopez-Aguilar] never gave them the opportunity to do so."[86] Regardless, the government's mere inability to intervene to prevent torture alone does not amount to acquiescence.[87]

To be sure, the record is replete with evidence detailing the Honduran government's failure to protect children such as Lopez-Aguilar from abuse at the hands of their families, gangs, and society generally. Nevertheless, the record also demonstrates "meaningful steps" on the part of Honduran authorities to ameliorate these conditions. The government has "purg[ed] . . . many policemen" involved in gang-related or other corrupt activities. The country has well-crafted laws for the protection of children and has continued to reform those laws. Finally, as of 2014, the government had proposed an entirely new infrastructure for promoting child welfare.

Regardless of whether these efforts prove fruitful, as in *Tabora Gutierrez*, we are not compelled to conclude that the Honduran government was or will be "willfully blind" to the type of harm Lopez-Aguilar has

---

[85] *See, e.g.*, *Garcia v. Holder*, 756 F.3d 885, 892 (5th Cir. 2014).

[86] *Sanchez-Amador v. Garland*, 30 F.4th 529, 534 (5th Cir. 2022) (considering an asylum application).

[87] 8 C.F.R. § 1208.18(a)(7); *Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019) ("[A] government's inability to protect its citizens does not amount to acquiescence.").

suffered or that it is even aware of his particular abuse, as he never reported it.[88]  We also pause to note the IJ's observation in this case that—the circumstances of Honduran children notwithstanding— Lopez-Aguilar is no longer a child.  As a result, it is not clear he would still be subject to the harms detailed in the record if he were returned to Honduras.

The possibility that the government might not protect him in the future is therefore impermissibly speculative.[89]  On the evidence presented, "a reasonable factfinder" could have concluded that Lopez-Aguilar will not "face torture by or with the consent or acquiescence" of the Honduran government,[90] and there is no indication that the BIA required Lopez-Aguilar to demonstrate that "government officials be willfully accepting of . . . torture."  Because Lopez-Aguilar's claim fails on the "state action" prong of the test,[91] we need not consider whether the harm he suffered amounts to torture within the meaning of the regulations.[92]

Finally, Lopez-Aguilar alleges that the BIA's judgment was "not reasoned" with respect to his CAT claim.  Lopez-Aguilar provides no support or explanation for this contention beyond his challenge to the BIA's ultimate conclusion.  Even if we were to construe it as a claim that the BIA

---

[88] 12 F.4th at 501, 505; *see also Ramirez-Mejia v. Lynch*, 794 F.3d 485, 494 (5th Cir. 2015) (explaining that "country reports . . . may weigh against [the] conclusion" that it was not more likely than not that the petitioner would be tortured upon return to Honduras, but "they do not *compel* the opposite conclusion.").

[89] *Garcia*, 756 F.3d at 892.

[90] *See Ramirez-Mejia*, 794 F.3d at 494.

[91] *See Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350-51 (5th Cir. 2006).

[92] *See* C.F.R. § 1208.18(a)(1) (defining torture).

No. 20-60974

failed to consider relevant evidence, however, such claim was not raised before the BIA and therefore remains unexhausted.[93]

Because we conclude that BIA applied the correct legal standard and that substantial evidence supports its judgment, we deny Lopez-Aguilar's petition as to his CAT claims.

*    *    *

We DENY Lopez-Aguilar's petition in part and DISMISS it in part for lack of jurisdiction.

---

[93] *See Omari v. Holder*, 562 F.3d 314, 320-21 (5th Cir. 2009); *cf. Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) (claim that the BIA ignored evidence was exhausted because petitioner asked BIA to correct IJ's identical error).